JAMES S. DOUGLASS AND OTHERS, PLAINTIFFS IN ERROR V. REYNOLDS, BYRNE AND COMPANY, DEFENDANTS IN ERROR.

Action upon the following letter of guarantee, written by the defendants and delivered to the plaintiffs :

*"Port Gibson, December 1827.*

"Messrs REYNOLDS, BYRNE & Co.

"Gentlemen : Our friend, Mr Chester Haring, to assist him in business, may require your aid, from time to time, either by acceptance or indorsement of his paper, or advances in cash ; in order to save you from harm by so doing, we do hereby bind ourselves, severally and jointly, to be responsible to you, at any time, for a sum not exceeding eight thousand dollars, should the said Chester Haring fail to do so.

"Your obedient servants,

"JAMES S. DOUGLASS.

"JOHN G. SINGLETON.

"THOMAS GOING."

One count in the declaration was for money lent, and money had and received. Held, that upon a collateral undertaking of this sort, no such suit is maintainable.

The depositions of several witnesses, clerks in the counting-house of the plaintiffs, were admitted on the trial of the cause, in which the witnesses stated that they knew that the letter of credit was considered by the plaintiffs as covering any balance due by C. H. to them for advances from time to time, to the amount of eight thousand dollars; that advances were made, and moneys paid by them on account of C. H. from the time of receiving the said letter, predicated on the letter always protecting the plaintiffs to the amount of eight thousand dollars ; and that it was considered in the counting-house as a continuing letter of credit, and so acted upon by the plaintiffs. Held, that this evidence was rightly admitted to establish that credit had been given to C. H. on the faith of it, from time to time, and that it was treated by the plaintiffs as a continuing guarantee; so that if, in point of law, it was entitled to that character, the plaintiffs' claim might not be open to the suggestion that no such advances, acceptances, or indorsements had been made upon the credit of it. The evidence was not open to the objection, that it was an attempt by parol evidence to explain a written contract.

Nothing can be clearer, upon principle, than that if a letter of credit is given, but in fact no advances are made upon the faith of it ; the party is not entitled to recover for any debts due by him from the debtor in whose favour it was given, which have been incurred subsequently to the guarantee, and without any reference to it.

The guarantee given by the defendants covered successive advances, acceptances and indorsements made by the plaintiffs, to the amount of eight

VOL. VII.—P

[Douglass and others v. Reynolds and others.]

thousand dollars at any subsequent times, toties quoties, whenever the antecedent transactions were discharged. It was a continuing guarantee.

Every instrument of this sort ought to receive a fair and reasonable interpretation according to the true import of its terms. It being an engagement for the debt of another, there is certainly no reason for giving it an expanded signification or liberal construction, beyond the fair import of its terms.

The cases of Russell v. Clarke's Executors, 7 Cranch's Rep. 69, 2 Peters's Condensed Reports, 417; and Drummond v. Prestman, 12 Wheat. Rep. 515, cited.

A party giving a letter of guarantee has a right to know whether it is accepted and whether the person to whom it is addressed, means to give credit on the footing of it, or not. It may be most material not only as to his responsibility, but as to future rights and proceedings. It may regulate, in a great measure, his course of conduct, and his exercise of vigilance in regard to the party in whose favour it is given. Especially it is important in the case of a continuing guarantee; since it may guide his judgment in recalling or suspending it.

If this had been the case of a guarantee limited to a single transaction, it would have been the duty of the plaintiffs to have given notice of the advances, acceptances or indorsements made under it, within a reasonable time after they were made. But this being a continuing guarantee, in which the parties contemplate a series of transactions, and as soon as the defendants had received notice of the acceptance, they must necessarily have understood that there would be successive advances, acceptances, and indorsements which would be renewed and discharged from time to time; there is no general principle upon which to rest, that notice of each successive transaction, as it arose, should be given. All that could be required would be, that when all the transactions under the guarantee were closed, notice of the amount for which the guarantors were responsible, should, within a reasonable time afterwards, be communicated to them.

A demand of payment of the sum advanced under the guarantee, should be made of the person to whom the same was made, and in case of non-payment by him, notice of such demand and non-payment should have been given in a reasonable time to the guarantors, otherwise they would be discharged from the guarantee. By the very terms of this guarantee. as well as by the general principles of law, the guarantors are only collaterally liable upon the failure of the principal debtor to pay the debt. A demand upon him, and a failure on his part to perform his engagements, are indispensable to constitute a casus fœderis. The creditors are not bound to institute legal proceedings against the debtor, but they are bound to use reasonable diligence to make demand and to give notice of non-payment.

An account was stated between the plaintiffs and Chester Haring, showing an apparent balance against Haring of twenty-two thousand five hundred and seventy-three dollars; and at the foot of the account the plaintiffs

[*Douglass and others v. Reynolds and others.*]

gave a receipt for several promissory notes, payable at distant periods, lated on the same day with the account. The notes were drawn by C. Haring, and indorsed by Daniel Greenleaf. The receipt stated that "the notes, when discounted, the proceeds to go to the credit of this account." The notes were discounted, and the proceeds received by the plaintiffs, but, being unpaid, they were protested; notice of their nonpayment was given to the indorsers, and they were afterwards taken up by the plaintiffs as indorsers thereof. Held: if the plaintiffs below, by their indorsements, were compellable to pay, and did afterwards pay the notes upon their dishonour by the maker, and these notes fell within the scope of the guarantee, they might, without question, recover the amount from the guarantors.

He who receives any note upon which third persons are responsible, as a conditional payment of a debt due to himself, is bound to use due diligence to collect it of the parties thereto at maturity, otherwise by his laches the debt will be discharged.

IN error to the district court of the United States for the district of Mississippi.

This was an action on the case instituted in the district court by Reynolds, Byrne and Company against the defendants, on a letter of credit or guarantee, signed by them, and addressed to the plaintiffs in the following terms :

'*Port Gibson, December* 1827.

"Messrs Reynolds, Byrne & Co.

"Gentlemen :—Our friend, Mr Chester Haring, to assist him in business, may require your aid, from time to time, either by acceptance or indorsement of his paper, or advances in cash; in order to save you from harm by so doing, we do hereby bind ourselves, severally and jointly, to be responsible to you at any time, for a sum not exceeding eight thousand dollars, should the said Chester Haring fail to do so.

"Your obedient servants,

"James S. Douglass.

"John G. Singleton.

"Thomas Going."

This letter of credit was delivered to the plaintiffs; and, upon the faith of it they were in the habit of accepting and indorsing bills and making advances for Chester Haring; and they from time to time received partial payments and consignments of cotton, to be sold by them and the proceeds placed to his credit.

[Douglass and others v. Reynolds and others.]

The transactions between Chester Haring and the plaintiffs commenced after the receipt of the letter of guarantee, and continued until March or April 1829.

The first count in the declaration, after setting out the letter of credit, charged that the plaintiffs did, on the faith of that letter, "accept and indorse the drafts or paper of said C. Haring, to a large amount, to wit: the sum of eight thousand dollars, upon certain terms, and payable at the times expressed in said drafts and paper of the said C. Haring; which said drafts and paper of the said C. Haring, so accepted and indorsed by the plaintiffs as aforesaid, they, the plaintiffs, became liable to pay, and, in consequence of their said acceptances and indorsements, did take up, pay, and discharge the same, at the maturity thereof." The count then charged the failure of Haring to discharge or pay the paper so indorsed and accepted by the plaintiffs, &c.; and concludes with a general breach of the guarantee of the defendants, &c.

The second count was indebitatus assumpsit, for money lent, had and received, &c., and the defendants pleaded the general issue.

The evidence upon which the questions of law arose, and which were decided by the court, is fully stated in the opinion of the court.

The case was argued by Mr Jones, for the plaintiffs in error; and by Mr Taney, for the defendants.

The counsel for the plaintiffs in error cited in the argument, 12 East, 227; 2 Camp. 214; 3 Camp. 220; Coburn v. The Duke of Marlborough, 2 Maule and Selw. 18; 3 Barn. and Ald. 593; 8 John. 119; 1 Mason, 323, 324; 3 Wheat. 150, 154; 1 Mason, 368; 2 Peters's Cond. Rep. 428; 2 Taunton, 306; 7 Wheat. 13; 1 Mason, 323; 9 Wheat. 720; 1 Stark. Rep. 111; 2 Ves. Jun. 540; 18 Ves. Jun. 20; 3 Merivale, 211; 1 Pothier on Obligations, 236, 260; 1 Domat. Civil Law, 205; Civil Code of Louisiana, 954; 1 Cranch, 181; 3 Cranch, 311; 6 Cranch, 253; Peters's C. C. Rep. 262; 1 Mason, 368; 4 Greenleaf's Rep. 525; 2 Hen. Black. 613; 1 Bos. and Pul. 419; 2 Cranch, 92; 16 John. 67; 17 John. 134; 3 Peters's

[Douglass and others v. Reynolds and others.]

Cond. Rep. 438; 2 Taunt. 306; 3 John. 68, 248; 8 John.
384, 109; 7 Mass. 449; 11 John. 449; 11 John. 180: 5 Mass.
170; 1 Serg. and Rawle, 334.

Mr Taney, for the defendants in error, cited, 2 Cranch's R.
413; 12 East, 227; 2 Camp. 29; 3 Camp. 220; 12 Wheat.
518; 1 Mason, 324, 325, 336, 368, 370; 7 Cranch, 69; 5 Pe-
ters's Rep. 626, 627; 1 Bos. and Full. 418; 3 Wheat. 101;
20 John. 365, 366; 3 Wheat. 154; 12 Wheat. 186; 5 Cranch,
253; 1 Bos. and Pull. 421; 8 John. 389; 8 Serg. and Low.
Eng. Com. Law Rep. 10, 78; 1 Desaussure's Rep. 315; Fell
on Guarantee, 202; 12 Mass. 154; 3 Kent's Com. 78; 9
Greenleaf's Rep. 207, 210; 1 Wheat. 186; 12 Wheat. 186,
556; 11 Wheat. 75, 76.

Mr Justice Story delivered the opinion of the Court.

This case comes before us upon a writ of error to a judgment
of the district court of the district of Mississippi, in which the
plaintiffs in error are defendants in the court below.

The original action is founded upon a guarantee, given by
Douglass and others in favour of one Chester Haring, by the
following letter:

"*Port Gibson, December* 1807.

" Messrs Reynolds, Byrne & Co.

" Gentlemen:—Our friend, Mr Chester Haring, to assist
him in business, may require your aid from time to time, either
by acceptance or indorsement of his paper, or advances in cash.
In order to save you from harm by so doing, we do hereby bind
ourselves, severally and jointly, to be responsible to you at any
time for a sum not exceeding eight thousand dollars, should
the said Chester Haring fail to do so.

" Your obedient servants,

" James S. Douglass.

" Thomas G. Singleton.

" Thomas Going."

The declaration contains two counts. The first alleges that,
upon the faith of the letter, the original plaintiffs accepted and
indorsed drafts or paper of Haring to the amount of eight thou-
sand dollars, which they were obliged to pay, and did pay at

[Douglass and others v. Reynolds and others.]

the maturity thereof; and of which they gave due notice to the defendants. The second count is for money lent, and money had and received. But this may be laid entirely out of the case, since it is very clear, that, upon a collateral undertaking of this sort, no such suit is maintainable.

At the trial upon the general issue and the plea of payment, the plaintiffs, who are resident merchants at New Orleans, offered evidence to prove the payment of five promissory notes, dated on the 1st of May 1829, payable to Daniel Greenleaf or order, and indorsed by him, viz.: one note due on the 20th of November 1829 for four thousand dollars; one due on the 20th of December 1829 for four thousand five hundred dollars; one due on the 20th of January 1830 for five thousand five hundred dollars; one due on the 20th of February 1830 for five thousand five hundred dollars; and one due on the 20th of March 1830 for five thousand five hundred dollars, in the whole amounting to twenty-five thousand dollars; and that the notes had been discounted with the plaintiffs' indorsement thereon, and were taken up by them at maturity.

It also appeared in evidence, that soon after the letter of guarantee had been received, acceptance had been made of the drafts of Haring by the plaintiffs to the amount of eight thousand dollars; and that other large transactions of debt and credit took place between them, upon which, on the 1st of May 1829, there was a balance of principal of twenty-two thousand five hundred and seventy-three dollars and twenty-three cents, besides interest, due to the plaintiffs, and credits to a larger amount than eight thousand dollars had come into possession of the plaintiffs. And on that day the foregoing notes were received, and the following receipt written on the account containing the balance.

"Received, Port Gibson, May 1, 1829, in part and on account of the above account, and interest that may be due thereon, the following notes, to wit, [enumerating them] amounting in all to twenty-five thousand dollars, which notes, when discounted, the proceeds to go to the credit of this account.

"REYNOLDS, BYRNE & Co."

There was a good deal of other evidence in the cause, but it

does not seem necessary to state it at large, since no part of it becomes important to a just understanding of the merits of the controversy, as it now stands before us.

In the progress of the trial the depositions of several witnesses who were clerks in the counting house of the plaintiffs were read, in which they stated, that they knew that the letter of credit was considered by the plaintiffs as covering any balance due by Chester Haring to the plaintiffs, for advances from that time to the extent of eight thousand dollars; and that advances were made, and moneys paid by them on account of Haring from the time of receiving the said letter of credit, predicated on the said letter always protecting the plaintiffs to the amount of eight thousand dollars, whenever the said amount or less might be uncovered; and that it was considered in the said counting house of the plaintiffs as a continuing letter of credit, and so acted upon by the plaintiffs.   To the admission of this part of the depositions the defendants objected; but the court overruled the objection, and permitted the evidence to be read to the jury as evidence *of the reliance of the plaintiffs upon the letter of credit to the amount of the eight thousand dollars,* for acceptances, payments, advances and indorsements made to Haring.   The defendants excepted to this admission of the evidence; and the propriety of this ruling of the court, constitutes the first question in the case.

We are of opinion that the evidence was rightly admitted in the view, and for the purposes stated by the court below. It was not offered to explain or establish the construction of the letter of credit (See Russell v. Clarke, 3 Dall. 415, S. C. 7 Cranch's Rep. 69), whether it constituted a limited or a continuing guarantee; and was not thus open to the objection which has been relied on at the bar, that it was an attempt by parol evidence to explain a written contract.   It was admitted simply to establish that credit had been given to Haring upon the faith of it from time to time, and that it was treated by the plaintiffs as a continuing guarantee; so that if, in point of law, it was entitled to that character, the plaintiffs' claim might not be open to the suggestion, that no such advances, acceptances or indorsements had in fact been made upon the credit of it: an objection which, if founded in fact, might have been fatal

to their claim. Nothing can be clearer upon principle, than that if a letter of credit is given, but in fact no advances are made upon the faith of it; the party is not entitled to recover for any debts due to him from the debtor, in whose favour it was given, which have been incurred subsequently to the guarantee, and without any reference to it.

The other exceptions are to certain instructions prayed by the defendants, and refused by the court.

They are as follows:

1. That the said letter of credit sued on is not a continuing guarantee, but is a limited one; and that when an advance or advances, acceptance or acceptances, indorsement or indorsements had been made by the plaintiffs on the faith of said letter of credit to the amount of eight thousand dollars, the guarantee became functus officio, and ceased to operate upon any future advances, acceptances or indorsements, made by said plaintiffs for Chester Haring. And that if the said plaintiffs received from said Haring, in payment of their advances, acceptances or indorsements, made on account of said guarantee, the amount of eight thousand dollars, it was a discharge of said letter of guarantee; and that any future advances, acceptances or indorsements, cannot be charged against and recovered from the defendants, by virtue of said letter of credit.

2. That to entitle the plaintiffs to recover on said letter of guarantee, they must prove that notice had been given, in a reasonable time after said letter of guarantee had been accepted by them, to the defendants that the same had been accepted.

3. That to entitle the plaintiffs to recover on said letter of credit, they must prove that, in a reasonable time after they had made advances, acceptances or indorsements for said Haring on the faith of said letters of guarantee, they gave notice to said defendants of the amount and extent thereof.

4. That to entitle the plaintiffs to recover on said letter of credit, they must prove that a demand of payment had been made of Chester Haring, the principal debtor, of the debt sued for; and in case of non-payment by him, that notice of such demand and non-payment should have been given in a reasonable time to the defendants; and in failure of such proof, the defendants are in law discharged.

5. That the promissory notes, drawn by C. Haring, the principal debtor, and indorsed by Daniel Greenleaf, and received by the plaintiffs on the 1st of May 1829, as expressed in the said receipt of that date at the end of their said account, and the discounting the same in New Orleans by the plaintiffs after they had indorsed the same for that purpose, the same being discounted before they fell due, and the receipt of the net proceeds arising from the discounting, carried to the credit of Chester Haring's account on the books of the plaintiffs, was a discharge of the guarantors on said guarantee, provided the debt now sued for was included in the sum total of said account, on account of which said promissory notes were taken and receipted for.

6. That if the said notes, mentioned in said receipt, were received as conditional payments of said debt, the defendants are discharged, unless it be proved that due diligence has been used to recover the amount called for by said notes from the individuals responsible thereon, and that the same could not be obtained.

7. That the plaintiffs, by accepting said notes on account of said debt, from C. Haring, the principal debtor, with D. Greenleaf as indorser, on account of said debt, the same being at that time due, and receiving the money on the same by discounting them, and the passing said notes away by indorsement, could not have sued Haring for the original debt, before said notes fell due, dishonoured and returned to the plaintiffs; and that, therefore, they by their own act placed it out of their power to proceed against said Haring, to recover said debt, before said notes fell due and were returned to the plaintiffs, which, in law, discharge the guarantors.

There was another exception, but it was withdrawn from the cause by the defendants; and that, as well as another respecting the refusal of the court to sign the bill of exceptions, without incorporating in it the evidence given at the trial, may be dismissed without commentary. It is proper to add, however, that the conduct of the court in relation to the bill of exceptions constitutes no just matter of error revisable in this form of proceeding; and if it did, we see no reason to question the propriety of its conduct upon the present occasion. It is mani-

festly proper for the court to require that all the evidence which is explanatory of the true points of the exceptions should be brought before the appellate court, to assist it in forming a correct judgment.

The question involved in the first instruction is, whether the guarantee contained in the letter is a limited or a continuing guarantee; or, in other words, whether it covered advances, acceptances and indorsements, in the first instance to the amount of eight thousand dollars, and terminated when these were discharged; or whether it covered successive advances, acceptances and indorsements made to the same amount at any future times, toties quoties, whenever the antecedent transactions were discharged. Upon deliberate consideration, we are of opinion, that it is a continuing guarantee; and we found ourselves upon the language, and the apparent intent and object of the letter. Every instrument of this sort ought to receive a fair and reasonable interpretation, according to the true import of its terms. It being an engagement for the debt of another, there is certainly no reason for giving it an expanded signification, or liberal construction beyond the fair import of the terms. It was observed by this court in Russell v. Clarke's Executors, 7 Cranch, 69, S. C. 2 Peters's Cond. Rep. 417, that "the law will subject a man, having no interest in the transaction, to pay the debt of another only when his undertaking manifests a clear intention to bind himself for that debt. Words of doubtful import ought not, it is conceived, to receive that construction." On the other hand, as these instruments are of extensive use in the commercial world, upon the faith of which large credits and advances are made, care should be taken to hold the party bound to the full extent of what appears to be his engagement; and for this purpose it was recognized by this court in Drummond v. Prestman, 12 Wheat. Rep. 515, as a rule in expounding them, that the words of the guarantee are to be taken as strongly against the guarantor as the sense will admit; Fell on Guarantee, ch. 5, p. 129, &c.: and the same rule was adopted in the king's bench in Mason v. Pritchard, 12 East's Rep. 227.

If we examine the language or object of the present letter, we think it is difficult to escape from the conclusion, that it

was intended, and was understood by all the parties as a continuing guarantee. There is no doubt that it was so interpreted by the plaintiffs. The object is to assist Haring in business: "our friend Mr Chester Haring," to assist him "in business, may require your aid." It was not contemplated to be a single transaction, or an unbroken series of transactions for a limited period. The aid required was to be "from time to time, either by acceptance or indorsement of his paper, or advances in cash." The very nature of such negotiations, with reference to the business of the party, unless other controlling words accompanied them, would seem to indicate a succession of acts at different periods, having no definite termination, or necessary connexion with each other. The language of the letter then proceeds: "in order to save you from harm in so doing we do hereby bind ourselves, &c. to be responsible to you *at any time*, for a sum not exceeding eight thousand dollars, should the said Chester Haring fail so to do." It is difficult to satisfy this language without giving to the guarantee a continuing operation. The parties agree to be responsible *at any time* for a sum not exceeding eight thousand dollars; and if so, is not the natural, nay necessary import, that the acceptances, indorsements and advances are not limited in duration; but that whenever made, and at whatever future times, the same responsibility shall attach upon them, not exceeding eight thousand dollars? We think that it would be difficult to give any other interpretation to the language; without subjecting mercantile papers to refinements and subtleties, which would betray innocent men into the most severe losses, by an unsuspecting confidence in them. That the language fairly admits of, if it does not absolutely require this construction, cannot be doubted. If it does so, it is but common justice that it should receive this construction, in favour of innocent parties, who have made acceptances, indorsements and advances upon the faith of it; according to the rule already stated, that the words shall be taken as strongly against the party using them as the sense will admit.

It is rare, that in cases of guarantee the language of the instruments is such as to make the decision upon one an exact authority for that of another   The whole words and clauses

are to be construed together, and that sense is to be given to each, which best comports with the general scope and intent of the whole. So far as authorities go, however, we think they are decidedly in favour of the interpretation which we have adopted. In Mason v. Pritchard, 12 East's Rep. 227, S. C. 2 Camp. 436, the words of the guarantee were, " to be responsible for any goods he hath or may supply my brother with to the amount of one hundred pounds;" and the court were of opinion that it was a continuing or standing guarantee to the extent of one hundred pounds, which might at any time become due for goods supplied until the credit was recalled. That case was certainly founded upon words less expressive and cogent than those of the case before us. In Merle v. Wells, 2 Camp. Rep. 413, the guarantee was, " I consider myself bound to you for *any* debt he (my brother) may contract for his business as a jeweller, not exceeding one hundred pounds, after this date. Lord Ellenborough held it a continuing guarantee for any debt not exceeding one hundred pounds, which the brother might from time to time contract with the plaintiffs in the way of his business; and that the guarantee was not confined to one instance, but applied to debts successively renewed. The case of Sansom v. Bell, 2 Camp. Rep. 39, before the same learned judge, is to the same effect. The case of Barton v. Bennet, 3 Camp. Rep. 220, was upon words far less stringent. There the guarantee was, " I hereby undertake and engage to be answerable to the extent of three hundred pounds for *any* tallow or soap supplied by B. to F and B., provided they shall neglect to pay in due time." Lord Ellenborough held it a continuing guarantee, principally upon the force of the word *any;* but the case went off upon another point.

The cases cited on the other side are all distinguishable. Kirby v. The Duke of Marlborough, 2 Maule and Selw. 18, turned upon the ground that the whole recital of the bond showed that a limited guarantee, for advances to a definite amount, when they were made the guarantee, became functus officio. In Melville v. Hayden, 3 Barn. and Ald. 593, the guarantee was, " I engage to guaranty the payment of A. to the extent of sixty pounds at quarterly account, bill two months,

[Douglass and others v. Reynolds and others.]

for, goods to be purchased by him of B.;" and the court held, that it was not a continuing guarantee, as the words "quarterly account" imported only the first quarterly account; and relied on the word "any" in Mason v. Pritchard, as distinguishing that case from the one before them. The case of Rogers v. Warner, 8 Johns. Rep. 119, was on a guarantee in these words. "If A. and B., our sons, wish to take goods of you on credit, we are willing to lend our names as security for any amount they may wish;" and the court held it to be a limited guarantee for a single credit. It is observable, that here no words of continuing credit, such as "from time to time," or "at any time" are used; so that the whole language is satisfied by one transaction. It is, therefore, strongly distinguishable from that before this court.

We cannot admit, therefore, as has been contended at the bar, that the courts have inclined to vary the rule of construction of instruments of this nature, and to hold them to be strictissimi juris, as to their interpretation. And we are well satisfied, that the authorities in no degree interfere with the construction which we have given to the terms of the present letter. The court below were, then, right in refusing the first instruction.

The second instruction insists, that to entitle the plaintiffs to recover on the guarantee, they must prove that notice had been given to the defendants of that fact in a reasonable time after the guarantee had been accepted. Whether there was not evidence before the jury sufficient to have justified them in drawing the conclusion that there was such notice, we do not inquire. It is sufficient for us to declare, that in point of law, the instruction asked was correct, and ought to have been given. A party giving a letter of guarantee has a right to know whether it is accepted, and whether the person to whom it is addressed means to give credit on the footing of it, or not. It may be most material, not only as to his responsibility, but as to future rights and proceedings. It may regulate, in a great measure, his course of conduct and his exercise of vigilance in regard to the party in whose service it is given. Especially is it important in the case of a continuing guarantee, since it may guide his judgment in recalling or suspending it.

The third instruction insists, that to entitle the plaintiffs to recover on the guarantee, they must prove that, in a reasonable time after they had made advances, acceptances or indorsements for Haring on the faith of the guarantee, they gave notice to the defendants of the amount and extent thereof. If this had been the case of a guarantee limited to a single transaction, there is no doubt that it would have been the duty of the plaintiffs to have given notice of the advances, acceptances or indorsements made to Haring, within a reasonable time after they were made. But this being a continuing guarantee, in which the parties contemplated a series of transactions, and as soon as the defendants had received notice of the acceptance, they must necessarily have understood that there would be successive advances, acceptances and indorsements, which would be renewed and discharged from time to time, we cannot perceive any ground of principle or policy, upon which to rest th doctrine that notice of each successive transaction, as it arose, should be given. All that could be required would be, that when all the transactions between the plaintiffs and Haring under the guarantee were closed, notice of the amount for which the guarantors were held responsible, should, within a reasonable time afterwards, be communicated to them. And if the instruction had asked nothing more than this, we are of opinion, upon principle, as well as upon the authority of Russell v. Clarke's Executors, 7 Cranch, 69, S. C. 2 Peters's Cond. Rep. 417; and Edmondston v. Drake, 5 Peters's Rep. 624, that it ought to have been given. Oxley v. Young, 2 H. Bl. 613; Peel v. Tatlock, 1 Bos. and Pull. 419. But it goes much further, and requires, in the case of a continuing guarantee, that every successive transaction under it should be communicated from time to time. No case has been cited which justifies such a doctrine, and we can perceive no principle of law which requires it. The instruction was therefore properly refused.

The fourth instruction insists, that a demand of payment should have been made of Haring, and, in case of non-payment by him, that notice of such demand and non-payment should have been given in a reasonable time to the defendants, otherwise the defendants would be discharged from their guarantee.

[Douglass and others v. Reynolds and others.]

We are of opinion that this instruction ought to have been been given. By the very terms of this guarantee, as well as by the general principles of law, the guarantors are only collaterally liable upon the failure of the principal debtor to pay the debt. A demand upon him, and a failure on his part to perform his engagements are indispensable to constitute a casus fœderis. The creditors are not indeed bound to institute any legal proceedings against the debtor, but they are required to use reasonable diligence to make demand, and to give notice of the non-payment. The guarantors are not to be held to any length of indulgence of credit which the creditors may choose; but have a right to insist that the risk of their responsibility shall be fixed, and terminated within a reasonable time after the debt has become due(a). The case of Allen v. Rightmere, 20 Johns. Rep. 365, is distinguishable. There the note was payable to the defendant himself or order, at a future day, and he indorsed it with a special guarantee of its due payment; and the court held his engagement absolute, and not conditional.

The fifth instruction insists that the promissory notes mentioned in the receipt of the 1st of May 1829, when discounted, and the proceeds carried to the account of Haring, operated a discharge of the guarantors, provided the debt sued for was included in the sum total of the account for which those notes were received. We think that the court were not bound under the circumstances to give this instruction. It proceeds upon the ground, that the notes were necessarily received as an absolute payment, a fact which the court had no right to assume, and that, by indorsing the notes and procuring the same to be discounted and credited in the account, the guarantee was, per se, discharged. This is not correct in point of law; for if the plaintiffs, by their indorsements, were compellable to pay, and did afterwards pay the notes upon their dishonour by the maker, and these notes fell within the scope of the guarantee, they might, without question, recover the amount from the guarantors.

(a) See on this subject Mr Wheaton's note to Lanusse v. Barker, 3 Wheat. Rep. 154, 155.

The sixth instruction asserts, that if the notes mentioned in the receipt, were received as conditional payments of the said debt, the defendants are discharged, unless it is proved that due diligence had been used to *recover* the amount of them from the individuals responsible thereon, and that the same could not be obtained. If, by the word "recover," were here intended a recovery by a suit at law, the proposition could not be maintained. But if, as we suppose, it is used in the sense of collect or obtain; its correctness, as a general proposition in cases of conditional payments of debts by notes, is admitted. He who receives any note upon which third persons are responsible, as a conditional payment of a debt due to himself, is bound to use due diligence to collect it of the parties thereto at maturity, otherwise by his laches the debt will be discharged. The difficulty is in applying the doctrine to the circumstances of the present case in the actual form in which it is propounded in the instruction. It assumes, as matter of fact, what the court cannot intend, that the notes were received as conditional payment. It does not assert what the debt is to which it alludes; though it probably refers to the debt stated in the account connected with the receipt. Now, that account is not in terms sued for; but certain drafts amounting to eight thousand dollars, accepted and indorsed, and paid by the plaintiffs: and whether they were included in the account or not, was matter of evidence and not matter of law. Although then the instruction asserted a proposition generally true in point of law, it is not clear, that, in the very terms in which it is propounded, with reference to the case in judgment, the court were bound to give it, since it involved matters of fact.

The seventh instruction is open to a similar objection. It manifestly assumes, as its basis, general questions of fact, upon which the court had no right to pronounce judgment. It also supposes that the debt sued for is wholly confined to the account, and that the notes referred to were not within the scope of the guarantee, and, if paid by the plaintiffs, could not be recovered by the defendants; which is far from being admitted. Indeed, this, and several of the preceding instructions proceed upon the ground, that the guarantee was a limited

[Douglass and others v. Reynolds and others.]

and not a continuing guarantee, which construction has been already overturned.

Upon the whole, we are of opinion that the court below erred in refusing the second and fourth instructions prayed by the defendants, and that for these errors the judgment must be reversed, and the cause remanded to the district court of Mississippi with directions to award a venire facias de novo.

This cause came on to be heard on the transcript of the record from the district court of the United States for the district of Mississippi, and was argued by counsel: on consideration whereof, it is the opinion of this court that the court below erred in refusing the second and fourth instructions prayed by the defendants, and that for these errors the judgment must be reversed. Whereupon, it is adjudged and ordered by this court, that the judgment of the said district court in this cause be, and the same is hereby reversed, and that this cause be, and the same is hereby remanded to the said district court with directions to award a venire facias de novo.