O’Neall, J.
dissenting. As I understand my brethren, they differ with me on two questions: 1st, whether the guaranty be a continuing one, and 2d, whether the plaintiffs’ action be barred.
My circuit opinion, on each of these questions, has undergone no change. The able argument of the defendants’ counsel has received a very deliberate consideration, and yet I think there is nothing in it which shakes the view I take of this case. There is no artificial rule in these cases of guaranty which forces us to construe the instrument against either party. “ The sense and meaning of the parties, upon a fair construction of the words used, must govern.” Still, there are rules of construction which may aid us in arriving at this. What is the most usual mode of interpreting words used ? It is, it seems to me, to give them that meaning which is their most usual and familiar interpretation: if they are susceptible of two meanings, and one of them be favorable to, and the other against the party using them, and there is nothing which gives preponderance to one meaning over the other, then comes in the rule that they must be understood, in that sense which is least favorable to the party using the words. In *138 construing an instrument, construction should be given to the whole of it, and not to words or parts of sentences, by themselves. Garbling an instrument, and construing it by words detached from the context, is any thing else than arriving at the sense and meaning of the parties. With these rules as our guide, let us attempt the construction of the defendants’ letter. Take the whole and read it as such, and, I repeat here what I said in my report, “ it is manifest to my mind, (although I presume it is not so to that of others,) that D. & J. Ewart contemplated aid and indulgence to be extended to their brother throughout the whole course of his business.” For, to a merchant, embarking in business in this town to buy cotton and sell goods, what advantage could it have afforded to have had credit for #4000 given him, for even a year 1 It would have been but a drop in the bucket, which would have remained, in spite of it, empty and dry. But it might well be, that, to gentlemen of the capital and enterprise of the plaintiffs, the certainty of an eventual indemnity of #4000, against loss, might present a motive to hazard a much larger amount in favoring the brother of their correspondents. This would be certainly the effect which such a letter would have on most minds ; and from such an effect, great advantages might be expected to be realized. Look to the account current between Boyce & Henry and Samuel Ewart, amounting to upwards of #170,000, and ask, how can it be believed that the guaranty of $4000 was intended to cover merely the first dealings amounting to that sum ? If this had been the true construction, the guaranty was exhausted on the 29th November ensuing its date: and if the plaintiffs had then said to Samuel Ewart, “ your credit is exhausted — we can credit you no farther,” the aid and indulgence procured for him would have been hardly worth the paper which the defendants used in writing their letter. The other construction, that it was to run through, and be a security against his failure for that much, in all his business, makes the guaranty worth something to Samuel Ew-art : for then, it is the cause of credit, running through several years, and of aid to the amount of at least #170,000. Let us now read this letter — remembering that it is between merchant • and merchant: “ Our brother, Samuel Ewart, is about to commence *139 business on his own account in Columbia, in which he will stand in need of your aid and indulgence, which if you render him, (in case of his failure or delinquency,) we will indemnify you to the amount of four thousand dollars.” What is meant by the words ‘is about to commence business on his own account, in which’ &c.? To what does the word ‘which’ refer? Is it to the commencement of his business, or is it to the business itself? The grammatical construction of the sentence shows that * business’ is the antecedent of the relative pronoun ‘ which’; and it should read, putting in the word to which the relative refers, ‘ Our brother, Samuel Ewart, is about to commence business on his own account, in which business he will stand in need,’ &c. This reading is not only grammatical, but it is so consistent with the object of the writer and the subsequent words used, that I am surprised any other construction should ever have been thought of. Can it be supposed, that a writer of Mr. David Ewart’s intelligence would have spoken of a future necessity, when, if the word used related to the commencement of business, it was then present and existing ? The writer goes on to say, 1 he will stand in need of your aid and indulgence.’ These words contemplate, if I understand the English language, future aid and future indulgence. The one was to be rendered as the party needed it, and the other to be extended to him from time to time. The natural import of the terms is, ‘ he will want money and goods from you in the course of his business, and he may not be able to pay for them regularly, and therefore he will need your aid and indulgence; which if you render him, (in case of his failure or delinquency,) we will indemnify you.’ If the letter had stopped at these words, and ‘ to the amount of #4000’ had not been added, could it have been doubted that the guaranty was both continuing and unlimited ? - I think not. If so, before we recur to the words used, let us ask what effect the sum fixed can have ? It cannot prevent the guaranty from being regarded as a continuing one: it is nothing more than the limitation of the defendants’ eventual liability under it. What is meant by the terms 1 failure or delinquency V It is true, in legal parlance, the neglect of any duty may be a failure, and the commission of any fault a delinquency ; but, as I said in *140 the outset, the defendants were merchants speaking to'merchants; and their words must have ’their usual interpretation among them. The word ‘ failure,’ applied to a merchant or mercantile concern, means an inability to pay his or their debts, from insolvency.'— I take it, then, that the word ‘ failure ’ must be regarded as sy-nonimous with ‘insolvency.’ . ‘ Delinquency’ cannot mean, when applied to a merchant, any thing less than that he has proved to be dishonest, and attempted to evade the payment of his debts. Read this part of the letter, ‘ in case of his insolvency or refusal to pay, we will indemnify you.’ Let it now be asked what is meant by the words ‘ we will indemnify you.’ Can it be supposed that they were intended to make the defendants mere sureties for $4000, then to be advanced ? Indemnity is a provision against a future possible loss. That is what the parties here contemplated. Samuel Ewart might fail in his business; and if so, D. & J. Ewart would indemnify the plaintiffs for a part of their loss, to the amount of $4000.
Having thus run through the letter, and ascertained the meaning of every doubtful phrase, without resorting to the rule, that if the words be doubtful, and there is nothing to fix a contrary meaning — then, that they should be taken in the sense least favorable to the party using them, the construction will be ■ much strengthened by thus applying it, and removing every doubt. — ■ Let the letter be now read as I have construed it: ‘ Our brother, Samuel Ewart, is about to commence business on his own account, in Columbia, in which business he will need your aid and indulgence, which if you render him, (in case of his insolvency or refusal to pay his debts,) we will indemnify you to the amount of $4000,’ — and I will ask any unprejudiced man what sort of guaranty is it ? Is it not to be and exist during Samuel Ewart’s business? The answer must be, it is so: and thus it becomes a continuing guaranty, limited as to the amount to be paid under it. Is there any thing in the cases on this subject which forbids this conclusion ? My time will not allow me -to examine them at length and in detail, as I should desire to do; but I know there is nothing in any one of them which stands in the. way. None of them afford any such test, (as my friend, the last counsel for the *141 defendant supposed,) by which every case of this sort may be at once decided, and the court enabled to say what is a continuing guaranty, and what is not one. Each case depends upon itself; the contract between the parties is its law, and not an artificial rule. If there is any such rule applicable to every case, it is that stated by Lord Ellenborough, when he said, “ if a party mean to confine his liability to a single dealing, he must take care to say so.”
The cases of Mason v. Pritchard, 12 E. 227; Merle v. Wells, 2 Camp. 413; Bastow v. Bennett, 3 Camp. 220; Hargreave v. Smee, 6 Bing. 224; Simpson v. Manley, 2 Tyr. 86; Allen v. Fleming, 9 Bing. 618, are all cases of continuing guaranty. That they are opposed by Melville v. Hayden, 3 Barn. & Ald. 593; Kay v. Groves, 6 Bing. 276, and Nicholson v. Paget, 1 Cr. & Mee. 54; in which it was held that the guaranties were special and limited, is not to be wondered at, when the result of the cases depended on the words used by the parties. The case of Sollee & Warley v. Meugy, 1 Bail. 620, is also a case of limited guaranty on the words used. But if I have succeeded, as I hope I have shown, that the parties guaranteeing here looked forward to successive dealings and future credits, then that case does not touch this. I said in my report, that this case was more like Douglass v. Reynolds, 7 Pet. 113, than the case of Sollee & Warley v. Meugy; and I now say, that, take that case and compare it with this, and they seem to me to be identical in every thing except that in that, the words ‘from time to time’ and ‘at any time,’ occur ; and in this, they are wanting: but in this, other words are used, indicating as clearly that the parties contemplated future dealings, credit and responsibility. It will be seen, that in passing upon the construction of the guaranty there, great stress is laid upon the fact that the object was to assist Haring in business. It is said “ it was not contemplated to be a single transaction, or an unbroken series of transactions, for a limited period.” These words apply in full force in this case, as much as they do to that. In that case, Mr. Justice Story denied that the courts have inclined to vary the rule of construction of instruments of this nature, and to hold them to be strictissimi juris, as to their interpretation. In his opinion, he sets out and maintains every rule of construe *142 tion on which I have relied. It seems to me, that all the confusion, in cases like the present, has arisen from the importance attached to the limitation in amount. It is hence that a guaranty is often concluded to be a limited one throughout, when it was-only intended to guard against a too great eventual responsibility. I can very well understand, when a party says “for goods to be delivered, or money to be advanced, to the amount of #4000,1 will be responsible,” that this should be held to be a limited guaranty: but when those expressions are varied, and the party says — “ for goods to be delivered, or money to be advanced, I will indemnify you to the amount of #4000,” — I am, I confess, unable to see the reason why that should be confined to a single transaction, or to an unbroken series of transactions, amounting to #4000. It is satisfied in every word, by an eventual loss arising out of the dealings between the parties. If the natural import of the words leads to this result, why apply an artificial rule to break down their meaning, and make the guaranty mean something which the parties did not intend 1 I do not understand that there is, on a contract, any such rule, as that the surety is to be favored in its construction. He is a party to it, and the rules of construction apply to him as they would to any other party.. Because a case is a hard one, is no reason that a party should be excused: but when we talk about a hard case, we forget that to absolve one, on whom a contract operates hardly, may make the case an equally hard one on the other party, who is thus deprived of his money. I am thoroughly satisfied, that the contract sued on is a continuing guaranty, limited in amount, but not as to time.
This being so, I propose now to show that the statute of limitations is no bar. To be barred, it must appear that the plaintiffs’ cause of action accrued four years before the commencement of this suit. When could they sue the defendants on this guaranty ? Certainly not until the insolvency of Samuel Ewart, or his refusal to pay his debts. If the suit could only be brought at or after his insolvency, it is perfectly clear, that from the assignment, which was the first evidence of his insolvency, to the commencement of this suit, the four years had not run out. If from a refusal to pay his debts, it would still be a less time: for, during a year *143 succeeding the assignment, he was endeavoring to pay. But, if the words * failure or delinquency’ mean simply a refusal to pay the debt to the plaintiffs, still the action is not barred; for, he attempted to pay by the assignment, and in the course of the year succeeding it, made payments. If, however, the words ‘ failure or delinquency’ mean a neglect to pay, then, I admit, something beyond them must be shown to prevent the operation of the statute. That, I think, is done, when it is shown that by the concurrence of the defendants an assignment was made to the plaintiffs, which was defeated by the course they recommended to be pursued in relation to it. If the guaranty be a continuing one, then that act, done with their concurrence, was an admission of their liability, and the statute could not sooner begin to run. — • But, when it is remembered, that by the advice of David Ewart, Samuel Ewart was to go on with his business for another year, in order to discharge this very debt, and other debts, to the defendants, or for which they were liable, and that the plaintiffs also consented to this arrangement, I should say that the plaintiffs could not sue these defendants, until the expiration of that time, and are therefore not barred.
Note. — It will be observed, that in reporting the eases of the Columbia December Term of the Court of Appeals, none of the arguments of counsel have been given. It would be perhaps sufficient here to remark, on that subject, that the present incumbent was not elected to the office of Reporter until the 14th of December, 1838, when all the cases of that term had been argued, and the opinions of the court, in all but two or three of them, delivered. The only mode in which any thing like a correct statement of the arguments of counsel in these cases could have been obtained, (if they could have been procured at all,) would have been through the politeness of the gentlemen of the bar, concerned in them, who might have retained, or would have been willing to prepare an abstract of their arguments, in the respective cases. To have waited for such information, would have involved too great delay in the publication of the decisions; which, under the present law, are required to be published within such a period of time from their delivery, as to leave nothing to spare. The only case in which any abstract of the argument of counsel has been furnished to the reporter, in relation to the preceding cases, is that of Mr. Gregg, in the case of Boyce & Henry v. D. & J. Ewart. The politeness of Mr. Gregg put in the- possession of the reporter a full statement of his very able argument in that case: and it is with sincere regret that the reporter found it impossible to publish it, where it properly belongs, in the report of the case itself. It will be remarked, that the case itself, embracing the very elaborate opinion of the majority of the court, and the dissenting opinions of Justices O’Neall and Evans, makes in all nearly twenty pages ; which is as much space, judging from the materials to make up the volume of Reports, as could well be assigned to it. The argument of Mr. Gregg, if published entire, would have added at least twenty pages more to the case; and the reporter found it impossible to do justice to it by any abridgment of it, which he thought practicable. The reporter regrets his inability to give the argument of Mr. Gregg, tin the case referred to; not only because he feels confident that it would have been read with great satisfaction, but because Mr. Gregg, in furnishing the reporter with a statement of his argument, drawn up by himself, has pursued the only mode in which the arguments of counsel ever can be 'given by the reporter, which will render them really valuable, and creditable to the profession. • R.
Gregg., for the motion.
Evans, J., concurred, as to the construction of the guaranty.