EDWARD STRONG, Appellant, v. JAMES E. LYON, Respondent.

Plaintiff having purchased 3,000 shares of certain stock, defendant exe-
cuted a guarantee whereby, in consideration of the sum of one dollar, he
agreed to save plaintiff from any loss on the purchase, occurring within
thirty days. This guarantee was renewed from time to time. Plaintiff
made many other purchases of large amounts of the same stock, and
made sales from time to time. The shares first purchased were not kept
distinct from the others but all were mingled together so that the iden-
tity was lost. The transactions resulted in a loss. In an action upon the
guarantee, *held*, that it was not a continuous one, but only included the
stock first purchased, and plaintiff having, by mingling the purchases,
rendered it impossible to ascertain whether there was a loss thereon,
could not recover; also, that the renewals, executed in ignorance of the
facts, did not extend the guarantee to other purchases.

(Argued October 8, 1875; decided November 9, 1875.)

APPEAL from order of the General Term of the Supreme
Court in the first judicial department, reversing a judgment
in favor of plaintiff entered upon the report of a referee and
directing a new trial.

This action was brought upon a guarantee, executed by
defendant, indorsed upon a bill of purchase rendered by
plaintiff's broker, dated December 24, 1866, for 3,000 shares
of the Consolidated Gregory Gold Mining Company.

The guarantee was in these words:

"For one dollar to me in hand paid by Edward Strong,
the receipt whereof is hereby acknowledged, I hereby agree
to save and hold the said Strong harmless from any and all
loss that he may sustain by reason of the purchase of the
within named 3,000 shares of the Consolidated Gregory Com-
pany, and if any such loss is made I agree to pay the same to
the said Strong, provided such loss shall occur within thirty
days from this date.

"JAMES E. LYON.

"NEW YORK, *December* 24, 1866."

This guarantee was renewed from time to time by written
instruments, the last of which was for sixty days from Febru-
ary 7, 1868.

The referee found in substance, among other things, that between December 24th, 1866, and April 8th, 1868, plaintiff purchased and sold many thousand shares of said stock, receiving and delivering the certificates therefor; that the certificates of the subsequent purchases were mingled with those of the 3,000 shares, and deliveries were made from all indiscriminately; that plaintiff had 3,000 shares continuously on hand, but that it did not appear whether the certificates received for the 3,000 shares first purchased were in the possession of plaintiff or his broker continuously. Sales were made of 3,000 shares, April seventh and eighth, resulting in a loss of $33,322.10 from the purchase-price of the 3,000 shares first purchased, for which sum, with interest, the referee directed judgment in favor of plaintiff, which was entered accordingly.

*Thomas Allison* for the appellant. The intention of the parties at the time the guarantee was given must govern its construction. (*Rindge* v. *Judson*, 24 N. Y., 64; *Agawam Bk.* v. *Streever*, 18 id., 502.) Plaintiff, in order to recover, was not bound to identify any specific shares, he need only show that he, at all times, held the number mentioned in the contract. (*Norton* v. *Morgan*, 19 N. Y., 170; 6 Duer, 56, 61; *Markham* v. *Jaudon*, 41 N. Y., 235, 243; *Nourse* v. *Prime*, 4 J. Ch., 490; 7 id., 69; *Allen* v. *Dykers*, 3 Hill, 593, 598.)

*Hiram A. Johnson* for the respondent. By mingling the shares in question with others so as to render their identification impossible, plaintiff rescinded the contract and relieved defendant of all liability. (*Goodrich* v. *Laflin*, 1 Pick., 57; *Frost* v. *Clarkson*, 7 Cow., 24; 16 Mass., 161; 1 J. Cas., 116.)

ALLEN, J. The contract, which is the foundation of the present action, is novel in its character, and may be said to be *sui generis*. It is, in form, an undertaking by the defendant without other than a technical consideration to indemnify

the plaintiff against loss from his own acts and dealings in a transaction undertaken for his own benefit, and in which the defendant had no interest, and could dérive no benefit. Perhaps the rule of construction of the instrument should be the same as in other cases of guarantee; that is, a fair and reasonable interpretation, according to the true import of its terms. When one engages to a third person for the debt of another, there is no reason for giving it an expanded signification or liberal construction beyond the language employed. It should not be extended by construction so as to include transactions not within the manifest intention of the parties. (*Douglass* v. *Reynolds*, 7 Peters, 113 ; *McCluskey* v. *Cromwell*, 1 Kern., 598 ; *Gates* v. *McKee*, 3 id., 234.) No more stringent rule should be applied to a contract of indemnity to one in respect of his own acts and contracts. The clear meaning of the agreement, construed most liberally in favor of the plaintiff and against the defendant, the guarantor, is that the plaintiff should be indemnified against loss upon a single and isolated transaction — a buying and selling of 3,000 shares of a specified stock. A continuous transaction or repeated buying and selling of this stock was not within the terms of the instrument. It was not in the contemplation of the parties that the plaintiff should engage and continue in unlimited speculation in the stock named during the time mentioned in the agreement, and that the defendant should be answerable for the result of the speculation to the extent of the difference between the cost of the 3,000 shares purchased simultaneously with making the agreement and the selling price of the last 3,000 shares sold, or any 3,000 shares that the plaintiff might sell in the course of his dealings. Such was the effect given to the engagement of the defendant by the referee. The 3,000 shares purchased by the plaintiff on the 24th of December, 1866, and which were the occasion and the subject of the guarantee, were mingled by the plaintiff and his brokers with many thousands of other shares, which were bought and sold by and for account of the plaintiff, and its identity lost. The liability and risk of the guarantor was essentially varied

by this mode of dealing by the plaintiff without his knowledge or assent.  One might be willing to guarantee against loss upon a single transaction, who would shrink from responsibility to any amount based upon the result of a series of gambling adventures involving hundreds of thousands of dollars in Wall street.  Had the plaintiff kept the 3,000 shares, the subject of the guarantee, distinct from his other operations, he might possibly have recovered, as his other ventures might not have released the defendant.  But had he, in such case, sold those shares, the result of the guarantee would have been fixed by such sale.  He could not have repurchased the same or other shares, and held the defendant as upon a continuing guarantee.  It is conceded that no one can tell, and the referee has not found that the identical shares against loss upon which the plaintiff was indemnified by the defendant, were not sold at a profit within thirty days.  If they were, the contract was at an end, and there was nothing to which the renewals entered into by the defendant, in ignorance of the facts, could attach. The defendant has undertaken for the result of a single transaction, and the plaintiff has so mingled the subject of the undertaking with very many other like transactions carried on simultaneously, that it is impossible to separate it from the others, and certainly show that there was a loss, and to hold the defendant under such circumstances would be essentially to vary the contract made by him.  The only importance of identifying the particular certificates representing the shares of stock, which was the subject of the guarantee, is that the stock, and the particular venture has no other ear-mark by which it can be traced, and the result made to appear, and whether the plaintiff did or did not own or have control of 3,000 shares of this particular stock, during his entire course of speculation, ending, as is usual in such cases, in ruinous losses, is not material.  At what time, or for what prices he sold this particular stock, neither he nor his brokers knew. He selects from all the accounts of his brokers a sale of 3,000 shares, in nearly a dozen different parcels on a given day, and elects to call those sales the closing out of the guaranteed

stock.    The shares then sold may have been purchased within a week of the sale and sold at an actual profit.    The evidence was not sufficient to charge the defendant.

The order granting a new trial must be affirmed, and judgment absolute for the defendant.

All concur.

Order affirmed, and judgment accordingly.