[No. 11129. Department One. July 28, 1913.]

## EXCHANGE NATIONAL BANK OF SPOKANE, *Appellant*, v. ALEX. PANTAGES, *Respondent*.[1]

GUARANTY—TELEGRAM—CONSTRUCTION. Where a corporation, upon demand for payment or security of its note given to a bank for a loan, sought a renewal agreeing that its president should guarantee the note, and the president, knowing that the bank was not satisfied, telegraphed "Tell bank I request them to renew note . . . I will arrange things satisfactory to them upon my return," which caused the bank to forebear, the telegram was understood as, and was, a guaranty of the note; since no particular form of words is necessary and the writing must be so construed as to determine the intention of the parties.

Appeal from a judgment of the superior court for King county, Tallman, J., entered November 23, 1912, dismissing

[1]Reported in 133 Pac. 1025.

an action on contract, upon sustaining a demurrer to the complaint. Reversed.

*Nuzum, Clark & Nuzum* and *Sullivan & Christian,* for appellant.

*John E. Ryan* and *Grover E. Desmond,* for respondent.

MOUNT, J.—The lower court sustained a general demurrer to the plaintiff's complaint in this case and dismissed the action. The plaintiff has appealed.

The complaint alleges, in substance, that the plaintiff is a national bank, doing business in the city of Spokane; that the Pantages Amusement Company is a corporation conducting a theater and amusement business in Spokane; the Pantages Theater Company is likewise a corporation doing a theater business; that the Pantages Amusement Company is one of a chain of theaters controlled by the defendant, beginning at Spokane and ending at Los Angeles, California, theaters in Seattle and Tacoma being a part of the chain; that the Pantages Theater Company is also owned and controlled by the defendant; that at all times the defendant was a stockholder in and president of the Pantages Amusement Company; that, on June 15, 1911, the amusement company executed to plaintiff its promissory note for $2,500, due ninety days after date, with interest thereon at the rate of eight per cent per annum; that the note was renewed when due for a period of ninety days; that on December 12, 1911, when the renewal note became due, plaintiff. demanded that the amusement company pay the same or secure the guaranty or endorsement thereof by the defendant; that the amusement company agreed to secure the guaranty of the note by the defendant, and at that time the amusement company executed to plaintiff a new note for the same amount, payable ninety days after December 12, 1911; that said note was not delivered or accepted as an obligation of the amusement company nor in satisfaction of the previous note, but that

plaintiff took and held the same in accordance with the understanding with the amusement company until the amusement company should secure the guaranty of the note by the defendant; that, on the 14th day of January, 1912, the defendant, for a good and valuable consideration, telegraphed Clark Walker, who is the general manager of the amusement company, under the defendant's signature, a telegram, of which the following is a copy, to wit:

"San Francisco, Calif., Jan. 14, 1912.
"Clark Walker, Pantages Theater, Spokane.

"Tell bank I request them to renew the note. Security just as good now as when loan was first made and they are collecting interest on their money. I will arrange things satisfactory to them upon my return to Seattle. Alex. Pantages";

that, on account of said telegram and the assurances therein contained, the plaintiff accepted the new note and did not enforce the payment on the original indebtedness which, prior to that time, the bank had threatened to do, relying upon the assurances of the defendant that he would arrange things satisfactorily to the plaintiff, and but for these assurances the plaintiff would have proceeded with its remedy on the original indebtedness; that, at or about the time of the execution of the original note, the defendant assured the officers of the plaintiff that the amusement company had ample resources to meet the payment of the note, and defendant was instrumental in securing the loan of the money represented by the note and the renewal thereof; that it was to the interest of the defendant that the plaintiff desist from bringing suit upon the note or upon the original indebtedness for the reason that, if the plaintiff had commenced suit against the amusement company, it could and would have closed the theater in Spokane in which the companies were showing and in other theaters owned and managed by the defendant, broken up the circuit, and made it impossible for the defendant to have shown his attractions in Spokane; that, on or about the 26th day of March, 1912, an action was commenced by Lois

Pantages, the wife of the defendant, against the amusement company, in King county, on sixteen promissory notes signed by the amusement company, in most cases payable to the Pantages Theater Company owned and controlled by the defendant, said notes aggregating $10,000; that a receiver was appointed and all the property of the amusement company sold to the theater company for a nominal consideration; that there is no money or property of the amusement company out of which to satisfy the plaintiff's demands; that it was not true, as stated in the guaranty and telegram of the defendant, that the security held by the plaintiff was as good at the time as when the loan was first made; but that the assets of the amusement company were being decreased by the defendant wholly and solely for the purpose of absorbing all of the assets of the amusement company; that plaintiff, on account of the matters contained in the telegram, did not bring suit upon the original indebtedness, but accepted the new note executed December 12, 1911, lost what security it had by reason of the then existing assets of the amusement company, and was prevented from realizing anything from the amusement company on account thereof; that no provision was made by the defendant for the payment of the note, no arrangement of any kind was made to secure the same by the defendant, and the note was never paid. The second cause of action was for a separate note for $2,500, based upon substantially the same state of facts.

The controlling question presented here is whether the telegram hereinbefore quoted constituted a guaranty by the defendant, Alex. Pantages, of the note sued upon. The trial court was evidently of the opinion that this telegram did not constitute a guaranty of the note, and therefore held that the complaint did not state a cause of action upon either note.

It is conceded in the brief that no particular form of words is necessary to constitute a guaranty. The rule seems to be that in order to constitute a guaranty the writ-

ing should be so construed as to determine the intention of the parties or, as stated in *Bell v. Bruen*, 1 How. 169:

"We think the court should adopt the construction which, under all the circumstances of the case, ascribes the most reasonable, probable, and natural conduct to the parties. In the language of this court in *Douglas v. Reynolds*, 7 Peters 122, 'Every instrument of this sort ought to receive a fair and reasonable interpretation according to the true import of its terms. It being an engagement for the debt of another, there is certainly no reason for giving it an expanded signification, or liberal construction beyond the fair import of the terms.' Or, it is 'to be construed according to what is fairly to be presumed to have been the understanding of the parties, without any strict technical nicety'; as declared in *Dick v. Lee*, 10 Peters 493, The presumption is of course to be ascertained from the facts and circumstances accompanying the entire transaction."

According to the facts alleged in the complaint, the defendant knew that the bank was not satisfied with the note which was offered as an extension of the payment of the note which was then past due. He then telegraphed to Mr. Walker, who was attempting to arrange for the extension: "Tell bank I request them to renew the note. . . . I will arrange things satisfactory to them upon my return to Seattle." We think it was clearly the intention of the defendant to guarantee the payment of the note, and it was evidently so understood by the bank at that time, according to the allegations of the complaint. In *Goldring v. Thompson*, 58 Fla. 248, 51 South. 46, 25 L. R. A. (N. S.) 418, the language used was: "Your money is good. I will be in your city in a few days." It was held that this constituted a guaranty. In *Dover Stamping Co. v. Noyes*, 151 Mass. 342, 24 N. E. 53, it was said that the plaintiff should be "taken care of." It was held that this constituted a guaranty. In *Wills v. Ross*, 77 Ind. 1, 40 Am. Rep. 279, where the statement was made, "Give John a little more time and I will see that you get your money," was held to be a guaranty. In *Mott Iron Works v. Clark*, 87 S. C. 199, 69 S. E. 227, the statement, "I will see

that you are protected in any dealings you may have with this corporation," was held to be a guaranty. In *Birdsall v. Heacock*, 32 Ohio St. 177, 30 Am. Rep. 572, the statement, "Please send my son the lumber he asks for and it will be all right," was held to be a guaranty. We think the language quoted above in this case used by Mr. Pantages in his telegram, under the circumstances surrounding the transaction, was understood to be, and was, a guaranty of the note. We are of the opinion, therefore, that the court was in error in sustaining the general demurrer to the complaint. The judgment is reversed and the cause remanded for further proceedings.

GOSE, CHADWICK, and PARKER, JJ., concur.