# THE DECISIONS

OF

# THE SUPREME COURT OF ALABAMA:

CONTINUATION OF

## JUNE TERM, 1837.

---

### SCOTT VS BRADFORD.

*Touching the construction of the statute of* 1821, *for the benefit of sureties.*

1 One notified by a surety, under the statute of 1821, to put in suit, any bond, bill or note, held against a principal and surety,—is not bound first, to sue the principal.

2. All that this statute requires, is, that on written notice fr.m the surety, the creditor shall put *the claim in suit*, in a reasonable time, and prosecute the same with diligence, and failing to do so, the surety is discharged.

3. And the benefit conferred on the surety, (by the first section of the same statute,) is, that if the creditor, omit to join the principal in the suit, the surety has the right, by notice to his principal, to get judgment against him, at the same time judgment is obtained against himself, by the creditor.

In error to the Circuit Court of Jackson county. This case was commenced before a magistrate in

Jackson county, and carried by writ of error, through the County and Circuit Courts, to this Court, as follows: ·

On the seventh of April, eighteen hundred and thirty-four, the plaintiff in error, signed a sealed note, together with one L. Wood, and as security for Wood, by which they promised to pay, on the first day of January, thence ensuing, the sum of thirty-five dollars, to one J. T. Bradford, administrator of L. James, for house rent, as witness their hands and seals, &c.; which note was placed in the hands of one Benjamin Coffey, as the agent of Bradford. Wood, it appears, subsequently removed to Huntsville, and after his removal, the plaintiff in error, gave notice to Coffey, as the agent of Bradford, that he was required to commence an action on the note, and the note was handed to a magistrate for collection: And the magistrate issued his warrant in favor of J. T. Bradford, administrator of L. James, deceased, for the use of Benj. Coffey, against L. Wood and R. T. Scott, which warrant was served on R. T. Scott. The constable returned L. Wood as not found. On the hearing, the magistrate gave judgment against R. T. Scott, for the debt and costs, who removed the cause by appeal to the County Court of Jackson county.

· And at the August term of the said Court, came a jury of good and lawful men, who on their oaths said, they found the issue in favor of Scott, and thereupon it was considered by the Court, that he go thence without day, and recover of plaintiff, Bradford, his costs, by him expended, about his defence, &c.

And thereupon, Bradford carried the case, upon
a bill of exceptions, to the Circuit Court of the
same county; which bill stated, that upon the trial
of the cause, the plaintiff introduced the note of de-
fendant, and Scott proved that he signed the note
as security for Wood.   Plaintiff admitted that on
the day of the date of the warrant, he had received
a written notice from defendant to sue.   Defendant,
(Scott,) then produced a written notice, dated
about the date of the warrant, from himself to
plaintiff, to bring suit, directing plaintiff, that Wood
the principal, was at Huntsville; but there was no
proof that this notice was served upon plaintiff,
other than that it appeared, that a notice, some-
thing like the one produced by defendant, was seen
upon a desk in a counting room, where the plain-
tiff lived, but at what time was not certainly stated.
It was also in proof before the jury, that Wood did
live at Huntsville, and that the plaintiff at the time
he brought suit, knew of Wood's residence at Hunts-
ville.   Upon which defendant moved the Court, to
instruct the jury, that if they believed that Coffey,
knew at the time of bringing suit, that Wood lived
at Huntsville, in Madison county, or elsewhere, it
was his duty, under the law, there to have sued
him; which instruction was given by the Court, and
to which the plaintiff excepted, &c.

The following is a copy of the notice adverted to
in the bill:

"Notice to B. B. Coffey.   Mr B. Coffey—Sir: As
agent of Joseph Bradford, I hereby notify you,
that you must commence suit immediately, on the
note given by Lewis Wood, at Huntsville, as prin-

cipal, and myself as security, for the sum of thirty-five dollars, made payable to Tipton Bradford, agent of Maria James, upon said Wood, principal, who now resides in Huntsville, or I will plead the statute, made and provided, for the benefit of sureties, upon joint obligations.

Yours, very respectfully:　March 23, 1836.
(Signed)　　　　R. T. SCOTT."

And in the Circuit Court, Bradford assigned for error, that the County Court erred, in giving the instructions to the jury, because the statute of eighteen hundred and eighteen, (Aikin's Digest, 267,) gives the obligee, the option of suing, either of two joint obligors. The statute of eighteen hundred and twenty-one, [Aikin's Digest, 385,] gives the joint obligor, thus sued alone, the right to give notice to the other, and obtain judgment against him. The sixth section of the same act, only enables one of several joint obligors, to compel the obligee to sue thereon, but does not prescribe against whom the suit shall be brought, but still leaves him the election given by the statute of eighteen hundred and eighteen. And when this is the case, he can have the benefit of the third section of the statute of eighteen hundred and twenty-one. The only effect of the notice, is to compel the obligee to collect his obligation; otherwise it would take away the election given by the act of eighteen hundred and eighteen.

And at the October term of the Circuit Court, the parties came, and the matters and things in dispute, being argued, and due consideration had thereon, it was ordered by the Court, that the judg-

ment and proceedings had in this case, in the County Court, be in all things reversed, annulled and held for nought, and that the plaintiff, there in error, recover of the defendant, the costs accruing, and that the case be remanded to the County Court for further proceeding.

And then the said R. T. Scott, by writ of error, brought the case to the Supreme Court, at this term, and assigned for error, that the said Circuit Court, in its judgment and proceedings erred, in reversing the judgment of the County Court, for the supposed error assigned in the Circuit Court, and prayed that the judgment of the Circuit Court, might be reversed.

*S. Parsons*, Attorney for plaintiff in error.
*J. Robinson*, contra.

ORMOND, J.—This action was commenced by the defendant in this Court, against the plaintiff, on a promissory note, as the surety of one Wood, before a justice of the peace. On the trial, Scott proved that the present defendant, then plaintiff, acknowledged on the day of the date of the warrant, that he had received written notice from Scott to sue. The justice of the peace rendered judgment for the plaintiff below, from which judgment, Scott appealed to the County Court.

At the trial in that Court, a bill of exceptions was taken, which discloses the fact already stated, of a notice by Scott to bring suit, (and other facts, not necessary to be stated, as they do not influence the opinion of the Court,)—whereupon, the

defendant, (Scott,) moved the Court, to instruct the jury, that if they believed the plaintiff knew, at the time of bringing the suit, that Wood lived at Huntsville, in Madison county, or elsewhere, it was his duty, under the law, there to have sued him, which instruction was given by the Court, and excepted to. The jury found for the defendant, and the plaintiff in error prosecuted a writ of error to the Circuit Court, and assigned for error, the charge of the judge of the County Court.— The Circuit Court reversed the judgment of the County Court, and remanded the cause. From that judgment a writ of error has been taken to this Court.

The assignment of error here is, that the Circuit Court erred, in reversing the judgment of the County Court. This assignment brings up for review, the charge of the judge of the County Court.

The correctness or incorrectness of this charge, depends on the construction of an act of the legislature, to be found on page 365 of Aikin's Digest, section 6,* which, in substance, provides, that a sure-

___

For the benefit of the foreign reader, to whom our statutes may not be familiar, the sections of the laws embraced within the principles of this decision, are subjoined.—*Reporter.*

*" When any person or persons shall become bound as security or securities, by bond, bill, or note, for the payment of money or any other article, and shall apprehend that his or their principal or principals is or are likely to become insolvent, or to migrate from this State, without previously discharging any such bond, bill or note, it shall be lawful for such security or securities, in every such case, (provided an action shall have accrued on such bond, bill, or note,) to require, by notice in writing of his or their creditor or creditors, forthwith

ty may give written notice to the creditor, after the maturity of the claim, "forthwith to put the bond, bill, or note in suit," and, unless the creditor so required, shall, in a reasonable time, commence and prosecute, with diligence, an action thereon, he shall forfeit his right to recover of the surety.

The requisition of this act is, that on the written notice of the surety, the creditor shall *put the claim in suit*, and, failing to do so, in a reasonable time, the surety is discharged. But who is the creditor required to sue—the principal or the surety, or both?

The judge of the County Court determined, that the effect of the notice, under the statute, was to compel the creditor to sue the principal; and that his failure to do so, exonerated the surety. This we think, was an incorrect exposition of the statute. The legislature certainly designed to confer a benefit on the surety. What was it? At common law, a surety had a right to discharge the obligation himself, and sue his principal. But the payment of the money was onerous, and might be inconvenient. But, by the aid of this statute, he can

to put the bond, bill, or note, by which he or they may be bound as security or securities, as aforesaid, in suit; and unless the creditor or creditors so required to put such bond, bill, or note, in suit, shall in a reasonable time, commence an action on such bond, bill, or note, and proceed with due diligence in the ordinary course of law, to recover judgment for, and by execution to make the amount due by such bond, bill, or note, the creditor or creditors so failing to comply with the requisition of such security or securities, shall thereby forfeit the right which he or they otherwise would have had, to demand and receive of such security or securities, the amount which may be due by such bond, bill, or note."—*Aikin's Digest*, page 385, §6.

5 P.            57

compel the creditor to sue, and if the principal be not joined in the suit, the first section of the same law,* gives him the right, by notice to his principal, to get judgment against him, at the same time judgment is obtained against himself, by the creditor: If the creditor failed to put the claim in suit in a reasonable time, and prosecute it with diligence, he was absolutely discharged.

This view of the statute in question harmonises with our other statutory regulations. By an act, passed in eighteen hundred and eighteen, Aikin's Digest, 267,† all obligations are made joint and several, and suit is allowed against any one or more of the parties thereto.

*" In all cases where judgment shall be entered up in any court of record, or by any justice of the peace, against any person or persons, as security or securities, their executors or administrators, upon any note, bill, bond, or obligation, and in all cases where execution shall be awarded by or issued from any of the Courts of record, or any justice of the peace against any person or persons, as security or securities, his, her, or their heirs, executors, or administrators, upon any bond, obligation or recognizance, and the amount of such judgment or obligation, or any part thereof, hath been paid or discharged by such security or securities, his her or their heirs, executors or administrators, it shall be lawful for such security or securities his, her, or their heirs, executors or administrators, to obtain judgment, by motion against such principal obligor or obligors, recognizor or recognizors, his, her, or their heirs, executors or administrators, in any court, or before any justice of the peace, where such judgment may have been entered up, and execution awarded against such security or securities, his her or their heirs, executors, or administrators, for the full amount which shall have *been paid,* with interest thereon from the time the same shall have been paid and satisfied, until such judgment shall be discharged."—*Aikin's Digest,* page 384, §3.

†" Every joint bond, covenant, bill, promissory note, or judgment of any Court of record of any State or Territory of

The construction which we are asked to put on the act in question, would, in effect, repeal the act just cited. But the act in favor of sureties, does not require any thing more of the creditor, than to "put the bond, bill or note in suit." This appears to have been promptly done in this case, and that is all the law requires.

The judgment of the Circut Court is, therefore, affirmed.

The view we have taken, renders it unnecessary to decide the other points raised in the cause.

the United States, shall be deemed and construed to have the same effect in law, as a joint and several bond, covenant, bill; promissory note, or judgment; and it shall be lawful to sue out process and proceed to judgment against any one or more of the obligors, covenanters, or drawers of any such joint bond, covenant, bill or promissory note, or against any one or more of the defendants to any such joint judgment.

" Whenever a writ shall issue against any two or more joint, or joint and several obligors, covenanters or drawers of any such bond, covenant, bill, or promissory note, or against two or more of the defendants to any such joint judgment, it shall be lawful for the plaintiff or his attorney, at any time after the return of said writ, or an alias writ, to discontinue such action against any one or more of the defendants, on whom such writ or alias writ shall not have been executed, and proceed to judgment against any one or more of said defendants on whom said writ shall have been executed, or proceed to issue an alias or pluries writ at his election."—Ib, page 267, §55 and 56.