42 U.S. 197
 1 How. 197
 11 L.Ed. 100
 THOMAS E. ELLIS, JONATHAN M. HILL, DANIEL ROPER, AND T.
B. BETHEA, PLAINTIFFS IN ERROR,
v.
THOMAS JONES, ADMINISTRATOR OF MONTRAVILLE D.
TAYLOR, DECEASED.
 January Term, 1843
 
 1
 THIS case was brought up by writ of error from the Circuit Court of the United States for the southern district of Alabama.
 
 
 2
 On the 16th of January, 1837, the plaintiffs in error executed the following bill.
 
 
 3
 $5000
 
 Wilcox C. H., Ala., January, 16, 1837
 
 4
 Twelve months after date, we or either of us promise to pay Montraville D. Taylor, or bearer, the sum of five thousand dollars, value received of him, as witness our hands and seals.
 
 
 5
 THOMAS E. ELLIS, [L. S.]
 
 
 6
 JONATHAN M. HILL, [L. S.]
 
 
 7
 D. ROPER, [L. S.]
 
 
 8
 T. B. BETHEA, [L. S.]
 
 
 9
 At some time after the date and delivery of the above bill, Taylor, the obligee, died intestate, and Thomas Jones, a citizen of the state of North Carolina, became his administrator.
 
 
 10
 In November, 1839, Jones brought suit against all the obligors in the Circuit Court of the United States for the southern district of Alabama. The defendants were returned 'not found;' but the suit being renewed to March term, 1840, they were all served with process except Hill, who was never reached.
 
 
 11
 Bethea and Roper severed in their pleas from Ellis. The latter pleaded usury, and that he had only received $4000 for the bill. Bethea and Roper pleaded that they were only sureties, but their plea not being sustained, a jury was empannelled, who found a verdict against the whole three, for $4000. As far as Ellis was concerned, there was no appeal, and the only question before this court was upon the validity of the pleas of Bethea and Roper.
 
 
 12
 In order to understand these pleas, it is necessary to refer to the laws of Alabama.
 
 
 13
 The act of 1821, c. 26, s. 5, (found in Aikin's Digest, 2d ed., title 'Securities,' s. 6, p. 385,) is as follows:
 
 
 14
 'When any person or persons shall become bound as security or securities, by bond, bill, or note, for the payment of money or any other article, and shall apprehend that his or their principal or principals is or are likely to become insolvent, or to migrate from this state without previously discharging any such bond, bill, or note, it shall be lawful for such security or securities in every such case, (provided an action shall have accrued on such bond, bill, or note,) to require, by notice in writing, of his or their creditor or creditors, forthwith to put the bond, bill, or note, by which he or they may be bound as security or securities, as aforesaid, in suit; and unless the creditor or creditors so required to put such bond, bill, or note in suit, shall in a reasonable time commence an action on such bond, bill, or note, and proceed with due diligence in the ordinary course of law, to recover judgment for, and by execution to make, the amount due by such bond, bill, or note, the creditor or creditors, so failing to comply with the requisition of such security or securities, shall thereby forfeit the right which he or they otherwise would have had, to demand and receive of such security or securities, the amount which may be due by such bond, bill, or note.'
 
 
 15
 Bethea and Roper filed two pleas; the first of which alleged that they were sureties; that Ellis alone received the consideration for the bill; that the intestate knew this; that until the—day of _____, 1839, Ellis was solvent, in good credit, and had property sufficient to pay the debt; that on the ___ day of July, 1838, in the lifetime of the intestate, they gave notice that he was required to institute suit against Ellis; that by reasonable diligence, he could have collected the debt from the principal; that the intestate did not and would not prosecute his demand within a reasonable time thereafter, but did not sue until the commencement of this suit; and that Ellis had become insolvent.
 
 
 16
 The second plea stated the same, in substance, with the addition that the notice, given to the intestate requiring him to sue, was in writing.
 
 
 17
 To these pleas a replication was put in, averring, that in the single bill sealed with the seals of the defendants, Bethea and Roper did, jointly and severally with the said Ellis, promise to pay; and thereby admitted themselves as principals in the said note; and that they ought not to be permitted to aver that they are sureties and not principals, nor that they had no interest in the consideration thereof, because of the admission and promise in the bill aforesaid.
 
 
 18
 To this replication there was a demurrer, and a joinder in demurrer.
 
 
 19
 The judgment of the court was, that the replication was sufficient in law, and that the demurrer should be overruled; from which judgment Bethea and Roper brought the case up, by writ of error.
 
 
 20
 R. Johnson, for the plaintiffs in error.
 
 
 21
 Jones, for the appellee.
 
 
 22
 Johnson's point was, that the law of Alabama authorizes such a defence as was made by the plea, without regard to the form which the obligation sued upon may assume, when, in fact, the relation of principal and security exists; or, at least, so allows it, if such fact is known to the creditor.
 
 
 23
 It is averred in the pleadings, that the intestate knew that they were sureties, and that they gave notice to the administrator to proceed against the principal, which notice was given in writing. In 1 Stewart, 11, the plea was the same as in this case; replication that the notice was not in writing; on demurrer, decided in favour of the defendant. 4 Porter, 232, is supposed to overrule the above, but it is shown not to do so by 9 Porter, 334.
 
 
 24
 The statute is a cumulative remedy, and it is therefore only necessary to aver the facts neglect and insolvency. The law is the same in New York. See 13 Johns. 174.
 
 
 25
 As to the second plea: The statute (Aikin's Dig. of Laws of Alabama) requires three things.
 
 
 26
 1. There shall be a note, &c., for the payment of money.
 
 
 27
 2. That notice shall be given to the holder.
 
 
 28
 3. That there must be a neglect on his part.
 
 
 29
 It is admitted here that the pleas contain all these averments, but the replication says that the obligation being joint and several, all were principals; and the question is, whether, the instrument being under seal, the fact of suretiship can be inquired into. Is the statute applicable to cases where the fact of suretiship does not appear on the face of the instrument?
 
 
 30
 General rule is, that parol evidence is not admissible to vary written contract; but there are exceptions, one of which is, where two parties are bound, but one is only surety. 2 Stark. ed. of 1834, p. 773, title 'Surety.' This being the law, the act did not intend to shut it out, for it meant to benefit the surety, and not the creditor. The first, second, and third sections all show this. By the act of 1811, c. 1, s. 2, (same Digest, 164,) parol evidence must be admitted, or the sheriff could not comply with the act. See also act of 1827, c. 27. The cases sustain this. 1 Stewart; 13 Johns. (above cited;) 5 Porter, 443; and 3 Stewart, 9, 160.
 
 
 31
 Jones, for appellee, maintained, that the replication, though but a re-averment of what sufficiently appears in the declaration and on the face of the cause of action itself, was a good answer to the plea, and was properly sustained on demurrer: that the plea itself was bad on general demurrer, and he was, for that reason, entitled to judgment on the demurrer.
 
 
 32
 Case in 13 Johnson stands on special ground; the holder of the note had promised to sue the principal. King v. Baldwin, 2 Johns. Ch. Rep. 552-554, lays down the rule with great clearness, that if the creditor gives time to principal by a positive act, it discharges the surety. But it must be by a positive act. See 10 Peters, 257; 3 Wheat. 520; 7 Peters, 126. Plea defective, because does not say for how long a time the creditor neglected to sue principal; what is reasonable time is a question of law, and the time must be stated.
 
 
 33
 Law says where a person is bound as surety: but this case is not so; he is bound as principal. Starkie refers to the case of co-obligors, and not that of obligee against obligor. The case in 9 Porter is where one was bound expressly as surety. Statute is a penal one.
 
 
 34
 Johnson, in reply.
 
 
 35
 13 Johnson only re-affirms 7 Johnson, which carried out the English doctrine. 13 Johnson cited with approbation in Sprigg v. Bank of Mount Pleasant, 10 Peters, 266. Statute not penal, but remedial. In 1811 began to protect surety, but did not carry it far enough. They substituted a legal presumption of mischief for actual proof, by making notice conclusive. Nothing in the act to require suretiship to be apparent on the face of the instrument. it is admitted that after surety has paid the debt, he may enter up judgment against the principal: did legislature then intend surety to be sued before he should have any relief? In Alabama, all contracts are several as well as joint, and therefore all would be shut out.
 
 
 36
 Not an open question, 3 Stewart, 9, 160; in 1830 where a bill of surety was dismissed, because he had a defence at law by giving notice to the creditor and did not avail himself of it. 9 Porter says statute is a cumulative remedy.
 
 
 37
 Jones refers the Court to United States v. Bradley, 5 Peters, 264.
 
 
 38
 The court being equally divided, the judgment of the court below was affirmed.
 
 ORDER.
 
 39
 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the southern district of Alabama, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court it this cause be and the same is hereby affirmed, with costs and damages at the rate of six per centum per annum.