Clark & others *v.* Remington.

---

## EZRA CLARK & others *vs.* ASA REMINGTON.

R., by his guaranty, engaged to pay C. for goods which C. might, from time to time, sell and deliver to D.: C. accepted the guaranty, and R. had notice that it was accepted: C. delivered one parcel of goods to D., for which D. seasonably paid. In September 1842, C. delivered other goods to D., and in March 1843 took D.'s note therefor, payable in thirty days, which was never paid: In June 1843, D. was in business, and had property sufficient to pay C.: In April 1844, D. was discharged from his debts, under the insolvent laws, but paid no dividend, and C. did not prove his claim against him, under the proceedings in insolvency: C. gave R. no notice of the credit which he had given to D., nor of the state of D.'s accounts with him, nor of D.'s failure to meet his payments, until the 1st of January 1845, when he demanded payment from R. of the amount due to him from D. *Held*, that R. was discharged from his liability on the guaranty, by C.'s omission to give him seasonable notice of the amount due from D., and of D's failure to pay it.

ASSUMPSIT on the following guaranty: " Hartford, May 3d 1842. Messrs. Clark, Gill & Co. Gentlemen: Please deliver Mr. Jesse Dilliber such iron, &c. as he may want, from

---

Clark & others *v.* Remington.

---

time to time, as he calls for it, and I will guaranty the payment to you of same. Asa Remington." The writ was dated August 8th 1845.

The case was submitted to tne court on the agreed statement of facts which follows:

" On the 3d of May 1842, Jesse Dilliber procured of the defendant the letter of guaranty declared on by the plaintiff. The defendant, who lived in Cabotville, was at Hartford at that time, and went to the plaintiffs' store to sign the guaranty, and knew that it was accepted by the plaintiffs, but did not know what amount of goods they sold to Dilliber, upon the credit of it. In September 1842, Dilliber, having paid all that remained of the previous bill, again purchased goods of the plaintiffs, to the amount of $100, which was the last purchase made by him of them, and the one for which they now seek to recover of the defendant, upon said guaranty. On the 16th of March 1843, the said bill, contracted in September 1842, not having been paid, the plaintiffs took of Dilliber a note for the amount, payable at Hartford Bank, in thirty days after date ; which note he did not pay at maturity, and the same still remains unpaid. No notice was given to the defendant, as to the amount of credit which the plaintiffs had given to Dilliber, upon said guaranty, nor as to the state of Dilliber's accounts with them, nor of his failure to meet his payments, nor that the plaintiffs relied upon the defendant for the payment of their claim, until about the 1st of January 1845, when the claim was put into the hands of their attorneys, at Springfield, for collection, who caused a demand to be made on the defendant for payment of the balance due, previously to the commencement of this action. Dilliber continued in his business, as a blacksmith, at Cabotville, until the summer of 1843 ; and on the 30th of January 1844 went into insolvency, under the provisions of the insolvent laws of this Commonwealth, and on the 3d of April 1844 obtained a discharge, under those laws ; but he has paid no dividend, and the plaintiffs never proved their claims against him, under the proceedings in insolvency.

" On the 5th of June 1843, Dilliber executed and delivered to J. Chapin, H. Foot & Co., V. Chapin and M. M. Bates, a mortgage of his interest in certain real estate in Cabotville, to secure their several claims against him, amounting in all to $643·54. The estate, so mortgaged, was a lot of land and dwelling-house, situate near Cabotville, and worth from twelve to fifteen hundred dollars ; and there was previously no in-cumbrance upon it, except an attachment which was soon after paid and removed."

*Norton,* for the plaintiffs. It is not necessary, in order to entitle the plaintiffs to recover, that they should have given the defendant notice of the sales which they had made to Dilliber, on credit. *Goring* v. *Edmonds,* 6 Bing. 94. *Red-head* v. *Cator,* 1 Stark. R. 14. *Allen* v. *Rightmere,* 20 Johns. 365. *Cutler* v. *Southern,* 1 Saund. 116. *Read* v. *Cutts,* 7 Greenl. 186. *Clark* v. *Burdett,* 2 Hall, 197. *Breed* v. *Hill-house,* 7 Connect. 523. *Hall* v. *Rand,* 8 Connect. 560. *Smith* v. *Dann,* 6 Hill, 543. *Eddowes* v. *Niell,* 4 Dall. 133. *Bent* v. *Hartshorn,* 1 Met. 24. *Salisbury* v. *Hale,* 12 Pick 416. *Duval* v. *Trask,* 12 Mass. 154. ' Nor did the taking of Dilliber's note discharge the defendant. 12 Mass. *ubi sup* *Butts* v. *Dean,* 2 Met. 76. *Curtis* v. *Hubbard,* 9 Met. 322. *Norton* v. *Eastman,* 4 Greenl. 521.

This was a continuing guaranty ; the defendant had notice that it was accepted by the plaintiffs, and that they had sold *some* goods to Dilliber, on the credit of it ; and the guaranty was never revoked. And in all the cases where guarantors have been let off, there was want of notice of acceptance, or of the giving of credit, or the guaranty was for a limited time.

*J. Wells,* for the defendant. This was doubtless a con-tinuing guaranty ; but the plaintiffs, in order to charge the defendant on it, were bound to give him notice of their deal-ings with Dilliber, on the faith of it. The defendant knew that the guaranty was accepted ; but he knew nothing more, until a demand of payment was made on him. The plain-tiffs' neglect to advise the defendant of their proceedings on

the faith of the guaranty, and their omission to collect their debt of Dilliber, have discharged the defendant from his liability ; especially as Dilliber has become insolvent.   3 Kent Com. (5th ed.) 124.    Story on Notes, § 485.   3 Wheat. 148 – 158, *note.    Tuckerman* v. *French,* 7 Greenl. 115.    *Russell* v. *Clark,* 7 Cranch, 69.    *Craft* v. *Isham,* 13 Connect. 28.    *Douglass* v. *Reynolds,* 7 Pet. 113.    *Lee* v. *Dick,* 10 Pet. 482.    *Cremer* v. *Higginson,* 1 Mason, 323.    *Dole* v. *Young,* 24 Pick. 250.    *Courtis* v. *Dennis,* 7 Met. 510.    *Talbot* v. *Gay,* 18 Pick. 534.    *Thomas* v. *Davis,* 14 Pick. 353.    *Babcock* v. *Bryant,* 12 Pick. 133.    *Oxford Bank* v. *Haynes,* 8 Pick. 423.    *Wildes* v. *Savage,* 1 Story R. 22.    Chit. Con. (5th Amer. ed.) 528, 533.    *Samuell* v. *Howarth,* 3 Meriv. 272.

WILDE, J.   This is an action of assumpsit on the defendant's guaranty in behalf of Jesse Dilliber, which, by the terms of it, was a continuing guaranty ; and the question upon the facts stated is, whether seasonable notice was given of the plaintiffs' acceptance of the guaranty, and the advances made thereon.

It is admitted that the defendant had notice of the acceptance of the guaranty at the time he signed it ; but he denies that he had any notice of the advances made thereon, until long after the last advance was made, and after Dilliber's insolvency ; and so it appears by the statement of the facts. The last purchase made by Dilliber of the plaintiffs, and the one for which they now seek to recover of the defendant, was made in September 1842 ; and no notice was given to the defendant of the amount of the credit given to Dilliber on the defendant's guaranty, until about the 1st of January 1845.   In the mean time, in January 1844, Dilliber went into insolvency, under the insolvent laws of this Commonwealth, and obtained his discharge in the month of April next following ; but he paid no dividend, and the plaintiffs never proved their claim against him.   The question then is, whether there has not been such laches, on the part of the plaintiffs, as to discharge the defendant from his liability for the advances made

After examination of the authorities, and a full consideration of the case, we are all of opinion that the defendant is so discharged.

The law on this point is correctly laid down in the case of *Cremer* v. *Higginson*, 1 Mason, 340. That was a suit on a guaranty, and Story, J. said, " it was the duty of the plaintiff, within a reasonable time after the advances were actually made, to give notice thereof to the defendants, and that reliance was placed upon their guaranty to insure the repayment; and if notice was not given in a reasonable time, nor until after a material change in the circumstances of the debtors, such laches of the plaintiffs was a complete discharge of the defendants from their guaranty."

The same doctrine is laid down in *Douglass* v. *Reynolds*, 7 Pet. 126. It was held in that case, that although, on a continuing guaranty, where a series of transactions was contemplated, no notice was necessary to be given to the guarantor of each successive transaction, yet " when all the transactions were closed, notice of the amount for which the guarantors were held responsible should, within a reasonable time after, be communicated to them." The case of *Craft* v. *Isham*, 13 Connect. 28, was decided upon the same principle. In that case, the authorities on this point were reviewed, and the court seem to us to be justified in saying that it was settled, by the decisions reviewed, beyond the possibility of doubt. The doctrine laid down in these cases has been held in several other States, and by this court in the case of *Babcock* v. *Bryant*, 12 Pick. 135. And the principle on which it is founded is just and reasonable. Good faith, we think, requires that when a party gives credit to another, on the responsibility or undertaking of a third person, he should give immediate notice to the latter of the extent of the credit; especially when, as in the case under consideration, a continuing guaranty is given without limitation of the time of its continuance, or of the amount of credit for which the guarantor might be held responsible. That reasonable notice was not

31 *

given in the present case, appears to the court very clear from the facts agreed.   No notice was given to the defendant of what was done under the guaranty, until nearly three years after the guaranty was given, and over two after the last credit was given to Dilliber; soon after which the plaintiffs settled with him, and took his note for the amount due, which he now seeks to recover of the defendant.   In the mean while, Dilliber ceased doing business, and mortgaged his property, worth from twelve to fifteen hundred dollars, to some of his creditors, and afterwards took the benefit of the insolvent laws, and obtained his discharge ; the plaintiffs not having proved their demand against him, under the insolvency proceedings. And it does not appear that they ever took any pains to collect their demand of Dilliber.   This, in strictness, they were not bound by law to do; but they were bound, after all the transactions under the guaranty were closed, to give notice, within a reasonable time, to the defendant, of the amount due to them for which he was responsible, so that he might have an opportunity to secure himself.   No such notice having been given, we are of opinion that this neglect, by law and justice, discharged the defendant from his liability.

And, on another ground, we think the defence may be well maintained.   In March 1843, the plaintiffs settled with Dilliber, and took his note for the balance, payable in thirty days, which was not paid at its maturity.   Of this delinquency of Dilliber the defendant was entitled to reasonable notice ; and it was not given.   Nor does it appear that the defendant had any knowledge of the fact, or of his subsequent insolvency, until long after he had obtained his discharge.   His note fell due in April 1843, nearly two months before he mortgaged his property to secure some of his creditors.   If the defendant had received seasonable notice of Dilliber's delinquency, there is good reason to suppose that he also might have obtained security.   It was gross negligence, on the part of the plaintiffs, to withhold this information from the defendant

and it would be unjust now to throw the loss on him. *Oxford Bank* v. *Haynes*, 8 Pick. 423.

On both grounds, therefore, we think the defendant has been discharged from his liability.

*Judgment for the defendant.*