Louisiana & Western Railroad Co. vs. Dillard et als.

No. 13,186.

LOUISIANA AND WESTERN RAILROAD COMPANY VS. S. DILLARD ET ALS.

### SYLLABUS.

An instrument of writing which recites that "we hereby guarantee that the town of Homer will furnish a free right of way to the La. & N. W. R. R. Co. to the Arkansas line—is in terms and in legal effect, an ordinary contract of commercial guaranty, and the parties signing same bind themselves jointly.

It is in its nature an independent undertaking, and did not require any action on the part of the town of Homer as a condition precedent to its perfection; and, being absolute in terms, no formal notification of acceptance on the part of the railroad company to the obligors was necessary to make it binding on them.

Its terms are equivalent to a guaranty that the municipality would vote a special tax in aid of the construction of the railroad, and that was a good consideration.

ON APPEAL from the Third Judicial District Court for the Parish of Claiborne. *Barksdale, J.*

*John A. Richardson* for Plaintiff and Appellee.

*McClendon & Seals* for Defendants and Appellants.

Argued and submitted May 31, 1899.
Opinion handed down June 12, 1899.
Rehearing refused June 27, 1899.

The opinion of the court was delivered by

WATKINS, J.    Suit is brought on the following written instrument, to-wit:

"We hereby guarantee that the town of Homer will furnish a free "right of way to the La. & N. W. R. R. Co., to the Arkansas line."
"April 7th, 1897.

"(Signed)    P. LOWENBURG.
"(Signed)    A. T. NELSON.
"(Signed)    A. K. KLINGMAN.
"(Signed)    J. H. KIRKPATRICK.
"(Signed)    WILLIAM P. OTTS."

And about eighty other persons.

Only five of the signers were cited, and against whom judgment was demanded *in solido* for the sum of $3,485.27, with legal interest from date of agreement; but a decree was rendered against the five defendants jointly, for the sum of thirty-three and 93-100 dollars, with legal interest from date of same. From that judgment the several defendants have prosecuted separate appeals; and in this court the plaintiff and appellee has filed an answer, and requested that the amount awarded it should be increased by $600.00, and that it be further amended by condemning all the defendants *in solido* for the entire amount awarded.

The following is an analysis of the petition, substantially:

That certain residents, about eighty in number, of the town of Hower, in the parish of Claiborne, Louisiana—the domicile of the plaintiff company—made and executed the aforesaid written agreement, which is denominated a bond or contract of guarantee. That after said instrument had been signed and delivered to the company in good faith, and relying thereupon, it proceeded with the location and construction of its road, and completed same to the Arkansas State line, "which it would not have done had not this security been given."

That the town of Homer failed and refused to obtain for the plaintiff company said promised free right of way, as will more fully appear by reference to the returns of a town election which was held on the 12th of September, 1898, disclosing the fact that a proposal to that effect was defeated at the polls.

That by the aforesaid refusal—the same being the only way in which it could legally act in the premises—the sureties upon said obligation became and were responsible for the sum the plaintiff has paid, and has obligated itself to pay, for said right of way.

That it became necessary for the company, in order to construct its road, to purchase from and pay to the parties who owned properties along the projected route of its road, for a right of way.

In the petition are enumerated various signers of the agreement who are irresponsible and insolvent, and to whom no citations were issued, and, thereupon, the following allegation is made, to-wit:

"That, under the law, where several persons become sureties for the " same debt, each of them is individually liable for the whole of the " debt in case of the insolvency of any of them; therefore it follows, " that the sureties on said annexed obligation, who are responsible,

" are individually liable for the whole debt."

To the petition the several defendants excepted that it set forth no cause of action, and the particulars in which claim is made that no cause of action is stated are, (1) that the defendants are sued as sureties of the corporation of the town of Homer, without it having been alleged that the town had entered into any contract with the plaintiff for the purpose of furnishing it a right of way, and that, in the absence of such an averment, they can not be held bound as sureties; (2) that the town of Homer is without authority in law to make a contract with a railroad company, and if such a contract were made it would be *ultra vires* and invalid; and under the law a contract of suretyship can only be given for the performance of a valid and legal obligation; in other words, that defendants can not be held liable as sureties, or as guarantors, for a contract which the town of Homer was without authority to make; (3) that the plaintiffs failed to allege that either the town of Homer or the defendants had been put in default, as a condition precedent to the institution of the suit.

The foregoing exceptions having been overruled, defendants filed an answer *in extenso*—first reserving their exceptions as a part thereof, and, further, pleading a general denial.

(1st.) They deny that the instrument sued on was ever issued, given out, or delivered, to the plaintiff as a valid or binding obligation, or that it ever accepted it as such; and that if ever accepted same at all, it gave no notice of such acceptance to the defendants.

(2nd.) That said instrument is not a contract, and that plaintiff obtained possession of same without the permission or consent of the defendants; and that same is without any consideration as to them.

(3rd.) That if same was given as a guarantee that the town of Homer would vote a special tax in plaintiff's favor for the purpose of purchasing its right of way, then it is illegal as contrary to public policy.

(4th.) That since said agreement was signed, the plaintiff, by means of a *mandamus* suit, compelled the town of Homer to order and hold a special election for the purpose of procuring the levy of a special tax to pay for said right of way.

On these several exceptions the defendants urge and plead an estoppel against the plaintiff's demand and right of recovery.

Further answering they aver that said agreement was never intended to represent the consummation of a contract, but was only

intended as an initiatory step towards the completion of negotiations then pending, "with a view of trying to place the town of Homer in a " position to make a contract with the plaintiff to provide for the " right of way from the northern limit of the corporation of the town " of Homer, to the Arkansas line; but that said pending negotiations " never matured into a completed contract."

In the alternative, defendants aver that they are not respectively bound, each, for more than their *aliquot* part or *virile* share of the amount claimed; that is to say, each one for one eighty-fourth part thereof, and if bound at all, they are only bound jointly, and not *in solido*.

That as an inducement to defendants to sign said agreement, the plaintiff, and its agents and representatives, stated that it had already a right of way through the town of Homer to its northern limits, and only desired to procure a right of way from said northern limits to the Arkansas line, and that they signed same under said promises and representations; but they aver that same were not true and were made in bad faith, and for the purpose of obtaining their signatures upon false and fraudulent devices.

The foregoing analysis will serve all the necessary purposes of a decision of the issues presented for decision, and which are (1) liability *vel non* of the defendants; (2) and, if at all, whether jointly, or *in solido*.

## I.

The first exception which attracts our attention, and which should be first decided is, that the defendants were not put *in mora*. There is in the petition no allegation, and in the record no proof of any formal default having been made as a condition precedent to the institution of the suit. Livingston vs. Scully, 38th Ann., 781.

But plaintiff's counsel contend that his petition alleges, substantially, an active violation of the contract by the defendants; and if this be true, a putting in default was unnecessary.

The law declares that "a contract may be violated either actively, " or passively, by doing something inconsistent with the obligation it " has proposed, or, passively, by not doing what was covenanted to " be done."

Rev. Civil Code, 1931.

It further declares that, "when there is an active violation of the

" contract, damages are due from the moment the act of contraven-
" tion has been done, and the creditor is under no obligation to put
" the debtor in default in order to entitle him to his action."

Rev. Civil Code, 1932.

His contention is (1) that the action of the electors of the town of
Homer in declining to call an election at which the question of levy-
ing a special tax should be submitted, and (2) after the said election
had been compelled by *mandamus* proceedings, said electors voted
against the proposition, the terms of the contract of guaranty were
actively violated—the defendants being citizens and electors of the
town of Homer, participating in said proceedings.

In our opinion counsel is correct in that contention.

The language of the contract is, "we hereby guarantee that the
" town of Homer shall furnish a right of way, etc.," and the action of
the town of Homer was in direct opposition thereto.    That was an
active violation of the contract in the sense of the Code.

Notwithstanding the obligation sued on is an independent one to
which the town of Homer is not made party, the consideration thereof
was an anticipated benefit accruing to the town of Homer.

It was clearly contemplated by the signers that the town of Homer
would "furnish a free right of way" to the Arkansas line, and relying
upon that expectation, they executed same.

That action by the town of Homer was a condition precedent to its
execution; and when it declined to take action in that direction, the
default of the defendants became complete.

But, even conceding that same is not a formal violation of a con-
tract in the sense of the article of the Code cited, it was a condition
of the agreement on the part of the railroad company that same
should be consummated.

The law provides, that, "when an obligation has been contracted
on condition that an event shall happen within a limited time, the
condition is considered as broken, when the time has expired without
the event having taken place.    If there be no time fixed, the condition
may always be performed, and it is not considered as broken until it
becomes certain that the event will not happen."

Revised Civil Code, 3038.

In this case the obligation was contracted on condition that the
town of Homer would furnish a free right of way; but there was no
time fixed within which the event would happen, and, therefore, it

FIFTY-FIRST ANNUAL REPORTS, 1899.    1489

Louisiana & Western Railroad Co. vs. Dillard et als.

was considered as broken when the vote of the property taxpayers of the town of Homer declined to authorize the tax to be levied; and this entitled the railroad company to purchase the right of way and to proceed against the defendants for the recovery of the amount expended therefor.

## II.

The second exception is, that as suretyship can only be given for the performance of valid contracts, the obligation declared upon can not be enforced, for the reason that it was given as a guaranty that the town of Homer would vote a special tax in plaintiff's favor, and is, consequently, illegal and invalid as contrary to public order and moral conduct.

A sufficient answer to this proposition is, that the Constitution of 1879 declared that the General Assembly has power to enact laws authorizing municipal authorities, "by a vote of the majority of the property taxpayers, in number and in value, to levy special taxes in aid of public improvements, or railway enterprises." Article 242. ,

It seems clear to our minds that all parties, in making said engagement, had the aforesaid provisions of the Constitution in view, and it is, therefore, a legal and valid engagement.

## III.

Counsel's further contention is, that the agreement is invalid, as being, in effect, a wager laid that an election shall result in a particular way, and in support of that proposition cite Glover vs. Taylor, 38th Ann., 634; and Davis vs. Holbrook, 1st Ann., 176.

In our conception no such proposition is presented in this case. The defendants entered into a contract of guaranty that the town of Homer, a municipal corporation, would furnish to the plaintiff a free right of way to the Arkansas line, and that was a perfectly legitimate subject of agreement. Railroad Company vs. Jacobs, 44th Ann., 922.

A sufficient answer to this contention of counsel is found in the following quotation from the defendants' answer, to-wit:

"That the document sued on was never intended to represent the consummation of a contract, but was a mere preliminary step incident to negotiations then being had, with a view of trying to place the town of Homer in a position to make a contract with plaintiff to provide for the right of way from the northern limits of the corporation of the town of Homer to the Arkansas line."

## IV.

The next proposition is, there can be no suretyship without a principal obligation, and that suretyship is an accessory promise by which a person binds himself for another, already bound; and that the agreement declared upon was never delivered to the plaintiff as a valid and binding obligation, and that plaintiff has never accepted it as such.

From the tenor and character of the instrument, we consider it a contract of guaranty, and not one of suretyship. It, in terms, declares that "we hereby guarantee that the town of Homer will furnish a free right of way"; and the parties signing same did not become security for the town of Homer at all.

The contract is an independent one, the motive for which was to secure a free right of way for the plaintiff in order that a railroad should be completed from the town of Homer to the Arkansas line, for the purpose of making a connection with some other railroad, and evidently for their own convenience, and that of the town in which they lived.

Upon this question there is ample evidence in the record.

It is evident that the town of Homer could not sign such an instrument, without some special authorization; and that was not contemplated. The guaranty of the contract was that the town of Homer would do something in the future; that is to say they would vote, at a special election to be held in pursuance of the Constitution, sufficient financial aid to procure said right of way.

With reference to the formal acceptance of the contract of guaranty, and the necessity of notification of said acceptance being given to the parties signing same, we think the opinion of the Supreme Court, as expressed in Davis vs. Wells, 104 U. S., 159, conclusive.

In that case it was held that the rule requiring notice by the guarantee of his acceptance of the guaranty, and his intention to act under it, applies only when the instrument being, in legal effect, merely an offer or proposal, such an acceptance is necessary to the mutual assent without which there can be no contract.

Hence, the true doctrine is that a guaranty of a future act, which is subject to a condition, must be formally accepted, and notice of such acceptance given by the guarantees; but it has no application to a contract absolute in terms, as the one sued upon is.

# V.

## ON THE MERITS.

The theory of the plaintiff is, that after the contract of guaranty had been furnished, and the town of Homer had failed to vote the necessary aid to procure the right of way for its road, it purchased from persons owning property along the projected route and paid for same, or promised to pay for same, and built its road from the town of Homer to the Arkansas line; and that, consequently, the defendants are responsible therefor, and are bound to reimburse plaintiff for its outlay.

On the trial it was shown that it was necessary for the plaintiff to procure the right of way from the property owners along the proposed route of its road between the town of Homer and the Arkansas line, and either to pay for same, or become responsible therefor; and there was introduced in evidence a compiled statement of the names of those persons from whom the right of way had been obtained, and the several amounts paid therefor—the number of persons being twenty-six, and the aggregate amount paid $3,484.67.

It was admitted by defendants' counsel that the plaintiff had paid to the persons therein named, the amounts therein stated; and the aggregate amount is the sum judgment was prayed for.

There was introduced in evidence the proceedings of a mass meeting which was held in the courthouse in the town of Homer, on the 7th of April, 1897, from which it appears that a committee was appointed for the purpose of obtaining signatures to the instrument sued on; and it appears to have been signed on the same date.

From an ordinance of the town council, of June 24th, 1897, it appears that a committee was appointed thereby, for the purpose of conferring with the property owners of the town of Homer, with reference to two different proposed routes through the town, "in order to agree on prices of the right of way through the corporation."

It appears from the evidence that on the 28th of July, 1897, several citizens and property owners of the town of Homer signed a document to the effect that the company should secure from the property owners along its proposed route the right of way that is contemplated in the agreement sued upon, and at the respective prices stated, and of the persons named, and "as agreed on by the property owners and a committee of citizens, etc.," the sum aggregating $3,400.00.

That agreement was made the basis of the special tax which it was proposed the town of Homer should vote in favor of the railroad company, and it was subsequently signed by thirty-six property owners thereof.

But after these proceedings, nothing further was done in the direction of securing the levy of the proposed special tax, so far as the record discloses, until the 6th of July, 1898, when the plaintiff filed a *mandamus* suit against the municipal authorities for the purpose of coercing them to hold an election for that purpose—alleging in its petition that seventy property taxpayers of the town of Homer had previously presented a memorial to that effect.

After issue joined and trial had, a judgment was rendered, making the *mandamus* peremptory; and subsequently an election was held and the tax defeated—the plaintiff's road having been, in the meantime, completed.

Some testimony was introduced and some argument made in respect to the charges of fraud and bad faith on the part of the plaintiff and its agents, officers and representatives, with reference to certain alleged representations made to the defendants for the purpose of obtaining their signatures to the agreement sued on; but, in our opinion, the same have not been sustained.

On the contrary, the record furnishes ample evidence of the fact that the defendants and other signers thereof were actuated exclusively by the desire that the plaintiff's road should be extended from the town of Homer, wherein they all lived, to the Arkansas line, with a view of other and advantageous connections.

On this theory and evidence, we think the defendants are, undoubtedly, bound.

But the defendants' counsel urge the additional contention that, in any event, the signers only had in view the right of way from the *north* boundary line; and that, under no condition, can they be held bound for any other right of way.

They contend that the lower judge did not hold defendants for the right of way over the Aubrey property, which is valued at $600.00, "because it was *south of the northern terminus of the plaintiff's road* " *at the time the document (sued on) was signed.*"

On this question many witnesses were interrogated, and their statements are, as usual in such cases, irreconcilable.

Some of the witnesses state that the general manager, and agents

of the plaintiff, told them that the route of the road, from its depot on the south side of the town, would pass on the east side of the town; and that the plaintiff either had the right of way, or possessed it virtually.

The statement of J. P. Aubrey is, that they said that the route would begin at the east end of the "Y" and go around the town, as they owned a right of way in that direction, except as to two parties.

Other witnesses state that there was nothing said as to where the road should be built, but that it was to go wherever the best route was attainable.

In the contract nothing is said on this subject, and the only course open was to test the matter by parol evidence; but a fair consideration of it has left our minds in doubt as to the proper solution of the difficulty.

In this situation we feel it to be our duty to rest our decision upon the judgment of the judge of the lower court, who saw and heard the witnesses.

The proof shows, that the value of the right of way through the Aubrey property was $600.00; and by deducting that sum from the total amount the plaintiff paid $3,484.67, and dividing the residue by 85, the total number of persons who signed the agreement sued upon, and the result produced is $33.93, the exact amount for which judgment was rendered against each of the defendants.

The only remaining question to be considered is the character of the obligation; and as it is written, "we hereby guarantee, etc.," our conclusion is that the obligation is joint and not *in solido*.

The document is, in terms, an ordinary commercial guaranty, and to be treated and considered as other commercial instruments of that class. And, indeed, if it be interpreted in accordance with the character of the enterprise, our conclusion would not be different.

Judgment affirmed.