O’NIELL, J.
The defendants have appealed from a judgment rendered against them in three suits on promissory notes, ' which were .consolidated for trial in the district court. Judgment was prayed for in one suit and rendered against the following named defendants, in solido: T. C. Davis as principal, and T. C. Wingate, Lee McAlpin, J. L. De Generes, R. L. Franklin, G. M. Taylor, and T. S. Franklin, as indorsers, on a promissory note for $5,000, with interest at 8 per cent, per annum from the 20th of October, 1912, and 10 per cent, attorneys’ fees. In the second suit, judgment was prayed for and rendered against the following named defendants, in solido: T. C. Davis as principal, and T. C. Wingate, J. L. De Generes, R. L. Franklin, G. M. Taylor, and T. S. Franklin, as indorsers, on a promissory note for $3,000, with interest at 8 per cent, per annum from the 2d of February, 1913, and 10 per cent, attorneys’ fees. And, in the third suit, judgment was prayed for and rendered against the following named defendants, in solido: J. H. Word, as principal, and G. M. Taylor, J. L. De Generes, R. L. Franklin, T. C. Wingate, T. J. Davis, and T. S. Franklin, as indorsers, on a promissory note for $2,-500, with interest at 8 per cent, from the 8th of October, 1912, and 10 per cent, attorneys’ fees.
In their answers to the suits, the defendants alleged that they had not received any consideration for the notes; that they were given merely to accommodate the First National Bank, the business and assets of which were afterwards taken over by the plaintiff bank with full knowledge that the notes were not valid obligations; and that the notes were given to represent a debt of a corporation in Leesville called the Vernon Iron Works, with the understanding and agreement that the bank would take a mortgage from the Vernon Iron Works to secure the debt and that the defendants who made and indorsed the notes would not be calléd upon to pay them.
The Vernon Iron Works, of which T. J. *726 Davis was president and all of the defendants except Dr. J. H. Word and T. ,S. Franklin were stockholders, was unable to meet its obligations and was put into the hands of a receiver in November, 1909. The First National Bank of Leesville held a mortgage on the property of the corporation to secure a large indebtedness, and there were other debts due by the corporation principally to laborers. The officials of the bank as well as the stockholders of the iron works 'were anxious to pay the claims of the laborers, do away with the receivership, and have the corporation resume business as a going concern. -It also appears that the Comptroller of the Currency, in the United States Treasury Department, complained of the status of the indebtedness due by the Vernon Iron Works to ttie First National Bank. With a mutual desire to relieve the situation,-an agreement was had, between the president and cashier of the bank on the one hand and the defendants on the other, that the defendants would give their individual notes, signed by the two of them who were not directors of the bank and indorsed by the others, for an amount sufficient -to pay the laborer’s claims and do away with the receivership of the Vernon Iron Works; and that the bank would liquidate its affairs, reorganize as a state bank, and take a second mortgage or the property of the Vernon Iron Works to secure the additional indebtedness" of $10,500. The promissory notes of the individuals, of which the notes sued on are renewals, were accordingly made and indorsed, and the proceeds of the discount were placed to the credit of the president of the Vernon Iron Works and checked out to pay the claims of the laborers. The corporation was taken out of the hands of the receiver and resumed business as a going concern. A note for $10,-500, secured by a second mortgage on the property of the Vernon Iron Works, was made and given to the First National Bank as collateral security of the notes that had been made and indorsed by the defendants individually. The note for $3,000 was after-wards transferred by the First National Bank to another bank in Leesville called the Bank of Leesville. Thereafter, in October, 1910, the First National Bank and the Bank of Leesville went into liquidation, and the liquid assets and business of both institutions were taken over by the present plaintiff, the First State Bank, which was organized for that pujóse. The notes involved in these suits and the two mortgage notes of the Vernon Iron Works were among the assets taken over by the new bank. It appears that its early career was not prosperous, and in September, 1912, the institution was closed under an order of the state bank examiner. A few days later, however, it resumed business under the management of another board of directors, who promptly proceeded to foreclose both mortgages in one executory pro-, ceeding against the Vernon Iron Works. The property was adjudicated to the plaintiff at a price less than the amount of the first mortgage.
There is no merit in the defense that the notes sued on were without a consideration or invalid because given as an accommodation to the First National Bank. The accommodation was to the Vernon Iron Works, whose creditors received full consideration from the First National Bank.
Pretermitting the question of authority of the president and cashier of the First National Bank to bind the institution by an agreement with the individuals who made and indorsed the notes that they would not be called upon to pay the obligations to the bank, our conclusion from the evidence is that the assurance of the bank officials was and is to be considered in connection with their agreement to take a second mortgage from the Vernon Iron Works as security for the debt. At that time, the value of the property *728 of the corporation, although in the hands of a receiver, was considered ample to secure the payment of the debts for which the defendants made themselves personally responsible to the bank. The defendants therefore made and indorsed the notes, not under a false representation or understanding that they would not be personally liable for the debt, but with full knowledge of the facts and on their own faith, induced perhaps to some extent by the opinion of the president and cashier of the bank, that the debt would be paid by the principal obligor, the Vernon Iron Works, or by the sale of its property, gee Interstate Trust & Banking Co. v. Irwin, 138 La. 325, 70 South. 313.
The judgment appealed from is affirmed.