(74 South. 267)

No. 21944.

HIBERNIA BANK & TRUST CO. v. SUCCESSION OF CANCIENNE.

(Feb. 12, 1917.)

*(Syllabus by the Court.)*

1. CORPORATIONS ⬤⟳325—GUARANTY ⬤⟳7(2) — DIRECTORS — FIDUCIARY RELATION — KNOWLEDGE.

The directors of a corporation are charged with knowledge of its financial condition and transactions. They are in the position of trustees, and the creditors, like the stockholders, of the corporation, are the cestui que trust. On account of that fiduciary relation of the directors of a corporation to its creditors, the directors are under a certain moral obligation to see that the creditors of the corporation are paid. Hence one who signs a continuing guaranty to be responsible for any loans or advances made or to be made to a corporation of which he is a director is charged with knowledge of the debts contracted on the faith of his guaranty and is not entitled to receive a formal notice from the guarantee of the acceptance of the contract of guaranty in order to bind him.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1442, 1457, 1458; Guaranty, Cent. Dig. § 9.]

2. GUARANTY ⬤⟳21—NOTICE OF ACCEPTANCE —WAIVER.

Although one who merely offers to become a guarantor for the payment of debts to be contracted by a third party is entitled to have notice of acceptance from the guarantee in order to complete the contract, such notice may be waived by the guarantor, and the waiver may be implied from the language or terms of the instrument of guaranty.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 23.]

3. GUARANTY ⬤⟳7(1)—ACCEPTANCE—NOTICE—LIABILITY.

One who signs as guarantor an instrument whereby he declares that he binds himself to an amount stated in the instrument, for the payment of any indebtedness of the third party named therein to the guarantee named therein, whether existing or to be thereafter incurred, expressly binding himself in solido with the principal debtor as if the debts were contracted by him in person, is not entitled to be notified by the guarantee of the acceptance of the guaranty in order to render the guarantor liable for debts contracted on the faith of the guaranty.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 9.]

4. GUARANTY ⬤⟳7(1)—COMPLETION OF CONTRACT—NOTICE OF ACCEPTANCE.

When an instrument of guaranty has been signed by the guarantor at the request of the guarantee and delivered by the guarantor to the guarantee or to the principal debtor to be by him delivered to the guarantee, the contract of guaranty is completed by the guarantee's acting upon it by advancing or loaning money to the principal debtor on the faith of the guaranty, and the guarantor is not entitled to notice of acceptance of the guaranty from the guarantee.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 9.]

5. GUARANTY ⬤⟳53(1)—CONTINUING GUARANTY—LIABILITY.

A continuing guaranty, whereby the guarantor binds himself for the payment of such debts as the party named in the instrument may incur from time to time, continues in force until it is revoked. The guarantor, under a continuing guaranty, is not released from his liability by the fact that the debt contracted on the faith of the guaranty was discharged and revived during the term of the guaranty.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 64, 66.]

6. GUARANTY ⬤⟳38(2) — CONSTRUCTION — CONTINUING GUARANTY.

Although the amount of the liability of the guarantor be limited, if the time be not expressly limited, the instrument is a continuing guaranty, to the amount for which the liability of the guarantor is limited, if the language of the instrument shows that the purpose was to give a standing credit to the principal debtor to be used from time to time.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 47.]

7. GUARANTY ⬤⟳53(1)—RELEASE—EXTENSION OF EXCESS CREDIT.

In the absence of an express stipulation that the guarantor shall be released from liability in the event the guarantee extends credit to the principal debtor beyond the amount stipulated, the guarantor is not released by the mere fact that credit is extended beyond the limit of the guarantor's liability. In such case the guaran-

tor is liable to the amount stipulated, though not for the excess.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 64, 66.]

8. GUARANTY ☞77(2) — LIABILITY — CONDITION PRECEDENT — PROCEEDING AGAINST PRINCIPAL DEBTOR.

If the guarantor expressly declares in the instrument of guaranty that he binds himself in solido with the principal debtor as if the obligation were contracted by him, the guarantor, in person, the latter is not entitled to the plea of discussion or to require the guarantee to proceed against the principal debtor before proceeding against him, the guarantor.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 89.]

Appeal from Twenty-Seventh Judicial District Court, Parish of Assumption; Charles T. Wortham, Judge.

Action by the Hibernia Bank & Trust Company against the Succession of Leo Cancienne. Judgment for plaintiff, and the administratrix of the succession appeals. Affirmed.

Marks, Le Blanc & Talbot, of Napoleonville, and Grant & Grant, of New Orleans, for appellant. McCloskey & Benedict and Frank Wm. Hart, all of New Orleans, for appellee.

O'NIELL, J. The administratrix of the succession of Leo Cancienne has appealed from a judgment rendered against the succession for the sum of $15,000, with legal interest from judicial demand.

The suit was upon two written instruments dated, respectively, the 16th of August, 1911, and the 23d of September, 1911, signed by Leo Cancienne, for $7,500 each, purporting to guarantee the payment of any indebtedness to that amount due or to become due to the Hibernia Bank & Trust Company by the Sugar Planters' Storage & Distributing Company. The instruments, being on printed forms furnished by the bank, are identical, except as to the date. In the following copy of one of them the words and figures written with a pen are produced in italics, to distinguish them from the printed matter in the form of the instruments, viz.:

### "Continuing Guaranty.

"In consideration of the giving of credit to *Sugar Planters' Storage & Distributing Co.* hereby give this continuing guaranty to the Hibernia Bank & Trust Company, New Orleans, La., for the payment in full, together with all interest, fees, and charges of whatever nature and kind, of any indebtedness of said *company* to said Hibernia Bank & Trust Company, up to the amount of *seventy-five hundred dollars*, whether on open account or evidenced by note, secured or unsecured, due and owing at the present time, or that hereafter may be due and owing by *Sugar Planters' Storage & Distributing* Company, *I,* holding myself, my heirs and assigns, in solido with the said *company* responsible for the said obligations, precisely as if the same had been contracted and due or owing by *me* in person; and, waiving pleas of discussion and division, *I* agree to pay upon demand at any time, the full amount due by said *company* to said bank, up to the amount of this guaranty, together with interest and charges, becoming subrogated in the event of payment in full by *me* to the claim of said bank, together with whatever security it may hold against said indebtedness.

"This done and signed this *23d* day of *September, 1911.*

"Witness:                     [*Signed*] *L. Cancienne.*
"[*Signed*] *Emile Cancienne.*"

The defenses to this suit are as follows, viz.:

First. That Leo Cancienne's signature to the instruments was obtained by the Sugar Planters' Storage & Distributing Company by fraud and misrepresentation, when the latter was not legally incorporated and was insolvent, to the knowledge of the plaintiff.

Second. That each of the instruments sued on is a nudum pactum, because the bank did not give notice to Leo Cancienne of an acceptance of his guaranty or offer of guaranty, and, in fact, did not accept the same, and hence there was no obligation on the part of the bank to loan or advance money to the Sugar Planters' Storage & Distributing Company after the signing of the instruments.

Third. That whatever indebtedness, if any, was due to the bank by the Sugar Planters' Storage & Distributing Company before the

instruments were signed by Leo Cancienne has since been paid and satisfied by collections made by the bank from, or for account of, the Sugar Planters' Storage & Distributing Company.

Fourth. That the plaintiff has no cause or right of action against the defendant without having obtained judgment against, and without having discussed and exhausted the property of, the Sugar Planters' Storage & Distributing Company, and that no judgment can be obtained against the latter in this suit, because the company is not a party hereto.

Taking up the defenses in the order stated above, we find no merit whatever in the first of them. The instruments sued on were signed by Leo Cancienne voluntarily and with full knowledge of the responsibility he was incurring. The allegation that the Sugar Planters' Storage & Distributing Company was not legally incorporated is not borne out by the evidence and would be unimportant to the issues in this case, if true. Leo Cancienne was one of the directors of the company continuously from the time of its incorporation until liquidators were appointed to settle its affairs. He was present at the meeting of the board of directors at which one of its officers explained the proposition of the Hibernia Bank & Trust Company to have the directors sign the continuing guaranties, of which Mr. Cancienne afterward signed the two sued on. There is evidence to the effect that, when Mr. Cancienne signed the instruments, only the amount, $7,500, was written in the printed form, and that he said he was signing only as a matter of form. It also appears, however, that the idea expressed at the previous meeting of the board of directors that the signing of these instruments was only a matter of form was based upon the belief that the guarantors would be fully protected by the pledges that were afterwards made to the Hibernia Bank & Trust Company of certain molasses bought with the funds loaned by the bank on these guaranties. The binding effect of signing as guarantor or surety with such an understanding was recognized in the decisions in Interstate Trust & Banking Co. v. Irwin, 138 La. 337, 70 South. 317, and First State Bank v. Davis et al., 139 La. 723, 72 South. 186.

Mr. Cancienne delivered the instruments to the manager of the Sugar Planters' Storage & Distributing Company to be turned over to the bank; and all of the writing on them was done before they were delivered to the bank. Mr. Cancienne knew that the bank would not accept his guaranty only as a matter of form.

[1] The question of solvency or insolvency of the Sugar Planters' Storage & Distributing Company at the time these guaranties were signed is a matter of no importance whatever. The evidence shows that the capital stock of the corporation was paid in, but that the corporation had no funds with which to buy molasses except what money it borrowed from the Hibernia Bank & Trust Company. It was to secure the loans made and to be made for that purpose that these guaranties were signed. It is presumed that Mr. Cancienne, as a director of the Sugar Planters' Storage & Distributing Company, had knowledge of its financial condition and transactions. The directors of a corporation are trustees, and its creditors, like the stockholders, are the cestui que trust. On account of that fiduciary relation of the directors to the corporation and to its creditors, the directors are under a certain moral obligation to see that its creditors are paid. See Brashear v. Alexandria Cooperage Co., 50 La. Ann. 589, 23 South. 540; Cahill v. People's Slaughterhouse & Refrigerating Co., 47 La. Ann. 1483, 17 South. 784; Hancock v. Holbrook, 40 La. Ann. 53, 3 South. 351; Frellsen v. Strader Cypress Co., 110 La. 877, 34 South. 857; Cochran v. Ocean Dry-Dock Co.,

30 La. Ann. 1365; Jackson v. Ludeling, 21 Wall. 616, 22 L. Ed. 492; Drury v. Cross, 7 Wall. 299, 19 L. Ed. 40; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328. Hence the directors are charged with knowledge of the contractual obligations of the corporation.

[2-4] With regard to the second defense it is conceded by the plaintiff that the bank did not notify Mr. Cancienne of its acceptance of his contract of guaranty. The bank did accept the guaranties and acted upon them by making further loans to the Sugar Planters' Storage & Distributing Company. Our opinion is that it was not necessary for the bank to notify the guarantor of the acceptance of his guaranty, for the following reasons: (1) The instruments were not mere offers to guarantee the indebtedness of the Sugar Planters' Storage & Distributing Company, but were direct and absolute promises on the part of the guarantor to be responsible in solido with the company for its debts to the amount stated in the instruments, and waiver of notice of acceptance is implied from the terms of the instruments; (2) the guarantor in this case, having been a director of the corporation whose debts he guaranteed, is charged with knowledge of the debts contracted by the corporation on the faith of his guaranty; (3) the instruments sued on were executed and delivered at the request of the plaintiff bank, and their execution and delivery to the bank was an acceptance of the latter's proposition and completed the contract of guaranty.

In support of the proposition that it was necessary for the bank to give notice to the guarantor of the acceptance of the guaranty, in order to complete the contract and hold the guarantor liable under it, the defendant's counsel cite the following as authority, viz.: Bank of Illinois v. Sloo & Byrne et al., 16 La. 539, 35 Am. Dec. 223; Lachman & Jacob v. Block & Bro., 47 La. Ann. 505, 17 South. 153, 28 L. R. A. 255; Douglas et al. v. Reynolds, Byrne & Co., 7 Pet. 113, 8 L. Ed. 626; Davis Sewing Machine Co. v. Richards, 115 U. S. 524, 6 Sup. Ct. 173, 29 L. Ed. 480.

In Bank of Illinois v. Sloo & Byrne et al., 16 La. 539, 35 Am. Dec. 223, Sloo & Byrne, in New Orleans, addressed a letter to the cashier of the bank at Alton, Ill., authorizing A. G. Sloo & Co., of Alton, Ill., to draw on them, Sloo & Byrne, at such times and for such sums as might suit the convenience of A. G. Sloo & Co., to the amount of $50,000. The firm of Shields, Turner & Renshaw and the firm of A. W. & R. M. Haines signed the following guaranty, written upon or under the letter of credit, viz.:

"We do hereby guaranty the punctual payment of any bill drawn and negotiated upon the faith of the within letter."

It was held, citing Douglas v. Reynolds, 7 Pet. 113, 8 L. Ed. 626, that Shields, Turner & Renshaw and A. W. & R. M. Haines were entitled to notice from the bank if the latter accepted the guaranty. Not only did the form of the guaranty require notice to the guarantors, but the circumstances were such that credit might have been given on the original letter of credit, signed by Sloo & Byrne, and not on the faith of the guaranty signed by Shields, Turner & Renshaw and A. W. & R. M. Haines. Hence it was necessary, to constitute a contract between the bank of Illinois and the guarantors, Shields, Turner & Renshaw and A. W. & R. M. Haines, that these guarantors should be notified if the bank accepted the proposition of Sloo & Byrne. The reasons for the decision rendered in that case can have no application to the form and terms of the guaranties signed by Leo Cancienne. Nor did it appear that the guarantors in the case cited were chargeable with knowledge of the financial transactions of A. G. Sloo & Co., or that the guaranty was executed at the request of the guarantee, the State Bank of Illinois.

In Lachman & Jacobi v. Block & Bro., 47 La. Ann. 505, 17 South. 153, 28 L. R. A. 255, the instrument sued on was not a direct promise to pay the debt of the third party, but was, in precise terms, an offer or agreement to become surety. Hence the decision that the party who proposed to become a guarantor for debts to be contracted by the other party was entitled to notice if his proposition or agreement was accepted by the guarantee can have no application to the form of the guaranties sued on in the present case. The signing of the agreement to become surety in that case was not done at the request of the guarantee, nor was the guarantor chargeable with knowledge of the debts contracted by the third party for whom the guarantor agreed to become surety.

In the case of Douglas et al. v. Reynolds, Byrne & Co., 7 Pet. 113, 8 L. Ed. 626, not only was the instrument sued on a mere offer to become surety for a third party, but it was a conditional offer, depending upon whether that third party would require the aid to be given him by the proposed guarantee. It was a letter of credit addressed to Reynolds, Byrne & Co., thus:

"Gentlemen: Our friend, Mr. Chester Haring, * * * may require your aid, from time to time, either by acceptance or indorsement of his paper, or advances in cash; in order to save you from harm by so doing, we do hereby bind ourselves, severally and jointly to be responsible to you at any time, for a sum not exceeding eight thousand dollars, should the said Chester Haring fail to do so."

The decision that the party proposing to become surety for Chester Haring in the event he should require the aid of the proposed guarantee was entitled to notice of the acceptance of the proposition can have no application to the form of guaranty in the case before us. Besides, the signing of the instrument in the case last cited was not done at the request of the guarantee, nor was the signer of the instrument chargeable with knowledge of the debts contracted on the faith of the instrument.

In the case of Davis Sewing Machine Co. v. Richards, 115 U. S. 524, 6 Sup. Ct. 173, 29 L. Ed. 480, the instrument sued on was held to be a mere offer to become surety or guarantor. In the following copy of the syllabus we put in italics an expression which makes the decision inapplicable to the case before us, viz.:

"The guaranty signed by the guarantor *without any previous request of the other party,* and in his absence, for no consideration moving between them except future advances to be made to the principal debtor, * * * is in legal effect an offer or proposal on the part of the guarantor, needing an acceptance * * * to complete the contract."

In Davis v. Wells Fargo & Co., 104 U. S. 159, 26 L. Ed. 686, the doctrine applicable to the case before us was stated, viz.:

"The rule requiring notice of the acceptance of a guaranty, and of an intention to act under it, applies only in those cases where, in legal effect, the instrument is merely an offer or proposal, acceptance of which by the guarantee is necessary to that mutual assent without which there can be no contract."

"If the guaranty is made at the request of the guarantee, it then becomes the answer of the guarantor to a proposal made to him, and its delivery to or for the use of the guarantee completes the communication between them and constitutes a contract. The same result follows where the agreement to accept is contemporaneous with the guaranty and constitutes its consideration. It must be so * * * where the instrument is in the form of a bilateral contract, * * * or which otherwise creates by its recitals a privity between the guarantee and guarantor. In each of these cases the mutual assent of the parties is either expressed or necessarily implied."

"Where a guaranty declares that the guarantor thereby guaranties unto the guarantee, unconditionally at all times, any advances, etc., to a third person, notice of demand of payment, and the default of the debtor is waived, as well as notice of the amount of the advances when made, when either or both would otherwise be required."

The doctrine expressed in Davis v. Wells Fargo & Co., supra, which is directly applicable to the case before us, was not overruled, but, on the contrary, was expressly affirmed in the later case relied upon by the defendant here, Davis Sewing Machine Co. v. Richards, supra. In the latter case it was said

that the decision depended upon the application of the rules of law stated in Davis v. Wells Fargo & Co., and the rules were summed up as follows:

"A contract of guaranty, like every other contract, can only be made by the mutual assent of the parties. If the guaranty is signed by the guarantor at the request of the other party, or if the latter's agreement to accept is contemporaneous with the guaranty, or if the receipt from him of a valuable consideration, however small, is acknowledged in the guaranty, the mutual assent is proved, and the delivery of the guaranty to him or for his use completes the contract. But if the guaranty is signed by the guarantor without any request of the other party, and in his absence, for no consideration moving between them except future advances to be made to the principal debtor, the guaranty is in legal effect an offer or proposal on the part of the guarantor, needing an acceptance by the other party to complete the contract."

That distinction, between a mere offer to become a guarantor, which requires notice of acceptance by the guarantee to the guarantor to complete the contract, and a direct promise or guaranty to pay the debt of a third party, whereby the notice is either expressly or impliedly waived, has been recognized by this court. In the case of Peoples' Bank v. Lemarie, 106 La. 429, 31 South. 138, it was said that notice of acceptance of guaranty may be waived by the form of the instrument or be implied from its terms. In that case notice of acceptance of the guaranty by the guarantee bank was not given to the guarantor, nor was the notice expressly waived, but the waiver was implied from the terms and form of the instrument. To the same effect are the decisions in Louisiana & Western Ry. Co. v. Dillard et al., 51 La. Ann. 1484, 26 South. 451, and Heitmann Co. v. K. C. Southern Ry. Co., 136 La. 825, 67 South. 895.

[5, 6] With regard to the third defense to this suit, the evidence shows that the Sugar Planters' Storage & Distributing Company is indebted to the plaintiff for an amount exceeding $15,000. The transcript of the account of the company with the bank, filed by the plaintiff in response to the defendant's prayer for oyer, discloses that collections were made by the bank at various times and applied to the credit of the Sugar Planters' Storage & Distributing Company; but it does not appear that the account was ever balanced or that the indebtedness was ever reduced below the amount of the guaranties. In our opinion, it would make no difference in the defendant's liability if the debt was discharged and revived by the transactions had between the bank and the Sugar Planters' Storage & Distributing Company after these guaranties were given, but before the suit was filed, because they are continuing guaranties. They are so declared and described in the instrument, and are so characterized by their language, even without the express declaration. In one of the cases cited by the defendant's counsel, that of Douglas et al. v. Reynolds, Byrne & Co., 7 Pet. 122, 8 L. Ed. 630, the guaranty was held to be a continuing guaranty because the language showed that the parties contemplated more than one transaction by the use of the terms "from time to time."

The learned counsel for the defendant contend that the instruments sued on in this case cannot be regarded as continuing guaranties because the amount of the guarantor's liability is limited. It is not inconsistent for a contract of guaranty to be limited in the amount of the liability of the guarantor and yet be continuing or unlimited in time. The rule laid down in 20 Cyc. 1440, citing Mathews v. Phelps, 61 Mich. 327, 28 N. W. 108, 1 Am. St. Rep. 581, and Kimball Co. v. Baker, 62 Wis. 526, 22 N. W. 730, is that, although the amount of the liability of the guarantor be limited, if the time is not expressly limited, the guaranty is nevertheless a continuing guaranty, to the amount for which the liability of the guarantor is limited, if the terms of the instrument indicate that the purpose was to give a standing credit

to the principal debtor to be used from time to time.

[7, 8] In this connection the learned counsel for the defendant advance the argument in their brief that the effect of the bank's extending credit to the Sugar Planters' Storage & Distributing Company beyond the amount of the guaranty was to release the guarantor from all liability. In support thereof they cite Spencer on Suretyship, p. 137, par. 101. But the view expressed by the author is entirely against their contention, viz.: In the absence of an express stipulation that the liability of the guarantor is to depend upon credit not being extended to the principal debtor beyond the amount stipulated, the guarantor is not relieved from his obligation to the amount stipulated by the mere fact that credit is extended to the principal debtor beyond the amount to which the guarantor's liability is limited. In such case the guarantor is liable to the amount stipulated, but not for the excess.

The fourth defense, that the plaintiff has no cause or right of action against the guarantor without having proceeded against, and discussed and exhausted the property of, the principal debtor, is destroyed by the fact that the instruments sued on contain an express waiver of the plea of discussion and division and declare that the guarantor is liable in solido with the principal debtor, the same as if the obligation had been contracted by the guarantor in person. Article 2094, R. C. C., provides that the creditor of an obligation contracted in solido may proceed against any one of the debtors, and the defendant will not be entitled to a plea of discussion or division. And article 3045, R. C. C., declares that a surety who has renounced the plea of discussion or bound himself in solido and jointly with the principal debtor is not entitled to a seizure and discussion of the property of the principal debtor, or to demand that the creditor proceed against the principal debtor before proceeding against him, the surety. See, also, Bank v. Sloo & Byrne (on rehearing), 16 La. 544, 35 Am. Dec. 223.

Our conclusion is that there is no merit in any of the defenses made to this suit, and that the judgment appealed from is correct.

The judgment appealed from is affirmed at the cost of the appellant.