LOTTINGER, Judge.
The facts in this matter are set forth in a “Supplemental Narrative of Facts Under Article 2131 LCCP” as follows:
“Pump Service & Equipment Co., Inc., debtor of Clayton Mark & Co., desired to obtain certain merchandise which Clayton Mark & Co. had previously sold to Highland Park Lumber Co., Inc., which latter company was in the process of going out of business. Richard H. Waller believed that it would be to the advantage of both Clayton Mark and Pump Service, Inc., to have these items transferred to Pump Service, Inc., with that corporation assuming the indebtedness which Highland Park Lumber Co., Inc. owed to Clayton Mark. The amount of the supplies in the hands of Highland Park Lumber Co., Inc., which had not been paid for, was estimated by the parties to be approximately Five thousand ($5,000.00) Dollars.
“Pump Service, Inc., was a newly formed corporation; and, in order to authorize the transfer of these particular items, Richard Waller executed the letter which has been introduced in evidence in which he personally obligated himself to Clayton Mark. Sometime later, additional credit was extended to Pump Service, Inc., by Clayton Mark, and the indebtedness of Pump Service, Inc., to Clayton Mark was evidenced by the execution of a note by Pump Service, Inc. to Clayton Mark. The dispute in this case is whether or not Richard H. Waller, by the execution of the aforesaid letter, bound himself to guarantee the payment of any indebtedness other than the original Five Thousand ($5,000.00) Dollars debt. There is no question of the obligations of Pump Service, Inc. to Clayton Mark & Co.
“It is undisputed that, by the terms of the above referred to letter, Richard Waller desired to transfer all Clayton Mark merchandise held by Highland Park to Pump Service, Inc.; that subsequently Waller acknowledged to Clayton Mark that approximately Five Thousand ($5,000.00) Dollars of Clayton Mark Merchandise was transferred from Highland Park to Pump Service, Inc.
“It is further undisputed that the note executed by Pump Service, Inc. to Clayton Mark was not endorsed by Richard PI. Waller.
“It is further undisputed that Mr. Waller testified, over objections of plaintiff, that it had been agreed between him and Clayton’s Mark’s representative that the new corporation, Pump Service, Inc., would make all future purchases from Clayton Mark on a cash basis; that the new corporation was for some time on a strict cash basis for other purchases; that the phrase ‘until further notice’ in the letter of guarantee referred to the fact that Five Thousand ($5,000.00) Dollars was merely an approximateion of the value of the goods to be transferred to the new corporation; and that it was his intent to bind himself until the amount had been definitely established and Clayton Mark was able to substi *226 tute a note secured by a mortgage on the goods to be transferred.
“Both plaintiff and defendant agree that at the time the aforesaid letter was executed (the letter of Waller introduced in evidence) there was no indebtedness existing between Pump Service and Clayton Mark.
“Mr. Waller further testified, over objections of plaintiff, that it was his intent, and he advised Clayton Mark verbally thereof, that the letter of guarantee was sent for the purposes of securing Clayton Mark if it would permit the transfer of these unpaid for items to the new corporation; that no debt was oed (owed) by Pump Service, Inc. to Clayton Mark older than the indebtedness created by the transfer of the above mentioned assets, and was the only obligation of Pump Service, Inc. to Clayton Mark which was secured by the guarantee of a third person.
“The checks introduced in evidence were given to Clayton Mark by Pump Service without direction that they should be applied to the portion of the obligation not guaranteed by Mr. Waller. The testimony of Mr. Waller was uncontradicted by the testimony of any person.”
The letter referred to in the aforesaid narrative of facts reads as follows:
Letterhead of Pump Service & Equipment Co., Inc.
“8180 Airline Highway
“Baton Rouge, Louisiana
“Phone Wa 1-1486
“Nov. 5, 1959
“Mr. Shaugnessy,
“Please note that attached P.O.’s are on Pump Service & Equip. Co., and that check is from Highland Park Supply. I am moving all pump business out of Highland Park to the new corp. of Pump Service. As soon as I can get Arch back down here, and with your approval, I want to transfer all Clayton Mark stock to the new co. I will then settle any outstanding Highland Park indebtedness. Until further notice, I will be personally responsible for any indebtedness of Pump Service & Equipment Co., Inc. to Clayton Park Co. up to $5,000.00. If you have any questions, please call or I will call you when Arch is here if you want me to.
“Thanks a million,
“/s/ Richard H. Waller
“Richard H. Waller
“P.S. Its too bad that L.S.U. can’t play Northwestern, did you hear what they did to Ole Miss.
“/s/ Dick”
With the pleadings and the foregoing before him, the Trial Judge rendered written reasons for judgment wherein he held as follows:
“The contest is primarily over a letter which the defendant, Richard Waller, wrote to the plaintiff, Clayton Mark & Company. The plaintiff contends that Richard Waller’s letter is a personal continuing guarantee by the defendant to pay all of the debts of the corporation known as Pump Service, Inc.
“The facts are accurately stated in the supplemental narrative of facts, and the following is the opinion of this Court, based on those facts.
“Richard Waller, whom the Court believes to be a man of poor business judgment, was connected with a company known as Highland Park Lumber Company, Inc. The plaintiff company had done business with Highland Park, and on hand at Highland Park was some $5,000 worth of supplies, which plaintiff had sold to Highland Park, and which had not been paid for. Highland Park was going out of business and the defendant, Richard Waller, was going into the same type of business and formed a corporation known as Pump Service, Inc. Waller was interested in working into the inventory of his newly formed company *227 the $5,000 worth of supplies on hand at Highland Park, which had not been paid for by Highland Park. The defendant Waller states, and the Court believes, that he wrote the letter for the purpose of effectuating the above transfer of equipment from Highland Park to his new company, Pump Service, Inc., and believes that he intended to personally guarantee to Clayton Mark the $5,000 worth of inventory that they had on hand at Highland Park, in order that they would transfer these supplies to his new corporation.
“The Court does not believe that he meant his letter to be a continuing guarantee for all purchases which his new corporation might subsequently make.
■“The Court is influenced in this belief by the testimony of the defendant Waller as to his intentions with regard to the letter. The Court is further influenced by the fact that when the letter was written, defendant did not owe plaintiff company one dime. The Court further believes the testimony, which was given over the objection of the plaintiff, that the new corporation was on a strict cash basis with Clayton Mark for sometime after the corporation began to do business with them. Further evidence influencing the Court is the fact that the plaintiff company liad the defendant, Pump Service, execute a note in the sum of $7,980.15, which note was given evidently to represent the debt of Pump Service, Inc., and defendant Waller was not asked to personally guarantee the same by placing his signature thereon.
“Under these facts, this Court finds it ■difficult to believe that the plaintiff extended credit to Pump Service on the basis of the aforesaid letter, and feels that the assertion that the letter herein referred to was a personal guarantee by the defendant for all the debts of Pump Service is an ‘after thought’.
“For the foregoing reasons, the Court denied the full claim of Clayton Mark & Company, and applied all payments against the original debt of $5,000.00, which was the first debt owed by Pump Service to Clayton Mark & Company, and which was for the inventory transfer.”
As stated by the Trial Judge, the contest resolves itself into a determination of the meaning of defendant’s letter quoted above. It is counsel for plaintiff’s contention that the Trial Judge’s ruling is in conflict with the holding of the Supreme Court in the case of Hibernia Bank & Trust Company v. Succession of Cancienne, 140 La. 969, 74 So. 267, L.R.A.1917D, 402. An examination of the instruments executed by the decedent in that case, however, shows that he warranted “any indebtedness of said company to said Hibernia Bank & Trust Company up to the amount of Seven thousand five hundred and no/100 — ($7,500.00) —Dollars, either on open account or evidenced by a note, secured or unsecured, due and owing at the present time, or that may hereafter be due and owing * * very explicit and unambiguous language, to say the least. Likewise, in the case of Continental Supply Company v. Tucker-Rose Oil Company, et al., 146 La. 671, 83 So. 892, also cited by counsel for plaintiff, the defendant signed an instrument stating that he would “guarantee the payment to you of the purchase price for such goods, wares and merchandise as you shall sell to the said Tucker-Rose Oil Co., Inc.
The question here, as we see it, is what was meant by the term “any indebtedness” as used in defendant’s letter of November 5, 1959, i. e., any indebtedness as may have existed at that time or any indebtedness as may have existed at that time together with any indebtedness that may thereafter arise in the future. Based on the testimony of the defendant, coupled with the actions of the parties, the Trial Judge concluded that it was intended by all parties concerned that only the then existing and undeter *228 mined but estimated indebtedness was guaranteed thereby. We agree that the phrase is not free from ambiguity, that it was therefore correct to examine the evidence as was done and that he was correct in concluding as he did.
For the reasons assigned, the Judgment appealed from is affirmed.